**STATE of Iowa, Appellee,**

v.

**Robyn JACKSON, Appellant.**

**No. 64419.**

Supreme Court of Iowa.

May 13, 1981.

Martha Shepard of Polk County-Des Moines Offender Advocate Office, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and Donald Starr, Asst. Polk County Atty., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McGIVERIN, and LARSON, JJ.

REYNOLDSON, Chief Justice.

Defendant was charged by trial information with one count of extortion, in violation of section 711.4, The Code 1979, and one count of terrorism, in violation of section 708.6(2), The Code 1979. Following jury trial she was convicted on both counts and sentenced to serve not more than five years in prison on each count. The two prison terms were to be served concurrently with each other, but consecutively with a previous sentence defendant already was serving. Defendant appeals, contending she could not be convicted legally of the crimes charged when there was no evidence the victim received the threats she allegedly made. Defendant also asserts she erroneously was found competent to stand trial. We affirm.

Both charges were based on a letter written and mailed to Governor Ray while defendant was a patient at the Iowa Security Medical Facility at Oakdale. The letter demanded the pardon of defendant's friend, Mary Lou Carstens, and contained explicit threats against the lives of the governor and members of his family. It was signed with defendant's initials, and the envelope in which it was delivered bore defendant's name, prison number, and address. The governor's secretary testified she opened and read the letter, then turned it over to a security guard without showing it to the governor.

A pretrial competency hearing was held on defendant's motion, and she was found competent to stand trial. Trial court allowed the insanity defense at trial, and overruled a defense motion reurging defendant's incompetency.

At the close of the State's evidence, and again at the close of all the evidence, defendant's motions for directed verdict were overruled.

I. At trial and here defendant challenges the sufficiency of evidence to support her conviction. She contends that be-cause there was no evidence the governor knew about the letter, the jury could not have found the threat was communicated to its intended recipient. We are thus confronted with the issue whether the State must produce evidence to prove the target of the alleged threats actually received those threats in order to establish violations of section 711.4, The Code (extortion), and section 708.6(2), The Code (terrorism).

Section 711.4, The Code, relevantly provides:

A person commits extortion if the person does any of the following with the purpose of obtaining for oneself or another anything of value, tangible or intangible, including labor or services:

1. Threatens to inflict physical injury on some person, or to commit any public offense.

Section 708.6(2), The Code, with which defendant also was charged, provides:

*Terrorism.* A person commits a class "D" felony when the person does any of the following with the intent to injure or provoke fear or anger in another:

. . . .

2. Threatens to commit a forcible felony under circumstances raising a reasonable expectation that the threat will be carried out.

Both sections prohibit threatening another. Defendant apparently concedes the contents of the letter constituted a threat. However, defendant would have us impose a requirement the threats be communicated successfully to the intended target for the act to constitute extortion or terrorism. We hold neither the ordinary meaning of the term "threaten" nor the legislative intent behind these statutes mandates such a result.

Unless otherwise defined by the legislature or the law, terms in a statute are attributed their ordinary meaning. *Linn Co-Operative Oil Co. v. Quigley,* 305 N.W. 2d 729, 731 (Iowa 1981); *In Interest of Hoppe,* 289 N.W.2d 613, 616 (Iowa 1980); *City of Des Moines v. Elliot,* 267 N.W.2d 44, 45 (Iowa 1978). "Threaten" is

defined as "to *utter* threats against"; "threat" is defined as "an *expression* of an intention to inflict evil, injury or damage on another." *Webster's Third New International Dictionary* 2382 (1976) (emphasis supplied). This usage suggests the focus in determining whether a threat has been made is upon the actions of the person expressing or uttering his or her intention to inflict evil, injury or damage.

■ To convict an accused under the terrorism statute, the State must prove the person making the threat did so "with the intent to injure or provoke fear or anger in another," creating "a reasonable expectation that the threat will be carried out." There is no express requirement the fear, anger, or reasonable expectation must be experienced by the intended target of the threatened wrongdoing.

Companion sections of the terrorism statute in the assault chapter have been interpreted to focus on the actor's intent and whether the *actor* believes the act will be carried out. For example, section 708.1(2) defines assault as, *inter alia*, any act intended to place another in fear of immediate painful, injurious, insulting, or offensive physical contact, coupled with the apparent ability to execute the act. Commentators addressing this second alternative definition of assault have stated:

> [A]pparent ability to execute the act is required, and ... it is not stated to whom it must be apparent. ... [T]here is no requirement that the victim actually be frightened, and the only act mentioned in this subsection is the act which is intended to place another in fear. If this is the act which this phrase refers to, "apparent" must be *apparent to the actor*, in which case this phrase seems to mean no more than that his expectations of placing another in fear must be reasonable.

J. Yeager and R. Carlson, 4 *Iowa Practice: Criminal Law and Procedure* § 174 (1979) (emphasis supplied). Thus, the emphasis is on the actor's intent, not on the victim's expectations.

Similarly, the terrorism statute does not state clearly whose reasonable expectation is addressed. But, because "the only act mentioned ... is the act which is intended to place another in fear," the reasonable expectation must be that of the actor. Like the other sections of the assault chapter, use of the objective standard of reasonableness indicates the issue is not whether the victim actually believed the threat would be carried out, but whether the actor so intended, and whether the actor's belief was reasonable. *See id.* § 181 ("[T]he gravamen of this [terrorism] offense is the intent.").

We also note that while subsection (1) of the terrorism statute explicitly requires the accused's act must place the victims of the act "in reasonable apprehension of serious injury," subsection (2) contains no similar language. This disparity suggests the victim's state of mind was not intended to be a factor in subsection (2), under which this defendant was charged. Rather, the focus is upon the accused's intent in communicating the threat, and remains upon his or her expectations that the threat be carried out.

It has been suggested the terrorism statute was enacted "to furnish an additional weapon to be used against the growing threat of political terrorism, but will be useful in other applications as well." *Id.* § 181. If indeed this was a legislative goal, the legislature must have foreseen that threats by political terrorists often are not communicated directly to the officials. As here, a written threat to an official may be intercepted pursuant to ordinary office routine. The actor's clear intent that the threat reach the political figure and cause him or her to fear harm, and that the threat will be implemented, is not altered by the mere fact the threat itself might not reach the political figure. If the requirement defendant urges us to adopt, that the threat be conveyed directly to the intended target, was read into this statute, many acts of terrorism would escape its bounds.

■ The same rationale is applicable to the extortion statute, which likewise centers on the actor's intent, and contains no requirement that the threat be communicated directly to its target. The actor must

make the threat with the purpose of obtaining a benefit, which this defendant enunciated clearly: the pardon of her friend, Mary Lou Carstens.

As with the terrorism statute, extortion by threat is an act that can be anticipated to be perpetrated against public officials by persons seeking benefits. It is unlikely the legislature intended to thwart conviction of persons who attempt to extort benefits from persons who, like the governor, are equipped with personnel to open their mail and who, therefore, might not themselves be aware of each and every threat against them.

■ Defendant clearly intended the letter to reach the governor. The envelope was addressed to him personally and the letter itself addressed "Robert Ray" and referred to him directly, not in the third person. These facts are distinguishable from those in *State v. Brownlee*, 84 Iowa 473, 478–79, 51 N.W. 25, 27 (1892), where there was no evidence the defendant intended the threats to be communicated by the recipient to the intended victim. In contrast, there is no evidence this defendant had any expectation the letter would not reach the governor. Whether he actually received the threat is immaterial to defendant's clear intent that he do so. *Cf. State v. McGinnis*, 243 N.W.2d 583, 589 (Iowa 1976) (assuming without deciding defendant could not be convicted for telephone threat made to third party, citing *Brownlee*, but noting that in *Brownlee* the evidence did not support a finding defendant intended threat to be communicated to victim).

Defendant advances no authority to support her contention that direct communication of a threat to its intended victim is required to constitute terrorism or extortion. Other jurisdictions have reached an opposite result under similar statutes. *See Richards v. State*, 585 S.W.2d 375, 376 (Ark. App.1979); *Gurley v. United States*, 308 A.2d 785, 787 (D.C.App.1973); *State v. McInnes*, 153 So.2d 854, 856–57 (Dist.Ct. App.Fla.1963); *State v. Knight*, 219 Kan. 863, 866, 549 P.2d 1397, 1400 (1976); *State v. Sondergaard*, 316 A.2d 367, 369–70 (Me.

1974); *State v. Schweppe*, 306 Minn. 395, 400–01, 237 N.W.2d 609, 614 (1975); *State v. Milano*, 167 N.J.Super. 318, 322–23, 400 A.2d 854, 856 (Law Div.1979), *aff'd*, 172 N.J.Super. 361, 412 A.2d 129 (App.Div. 1980); *see also* 86 C.J.S. *Threats and Unlawful Communications* § 3, at 788 (1954).

■ Although we conclude there is no requirement under either the terrorism or extortion statute that the threats be communicated directly to the intended target, trial court submitted jury instruction 14, which stated that to find defendant guilty the jury must find "Robert D. Ray reasonably expected that the threat would be carried out." If interpreted to mean the governor himself must have reasonably expected the threat would be carried out, this instruction clearly is inconsistent with our above statutory interpretations. However, any misleading impact was eliminated by instruction 16, which stated that "whether Robert D. Ray 'reasonably expected that the threat would be carried out' means whether, under the existing facts and circumstances, a reasonable person would expect that the threat would be carried out." Defendant objected to instruction 16 at trial, but does not challenge it on appeal.

Defendant argues that to the extent the jury found as instruction 14 required, its action was "amazing," but does not acknowledge the clarification instruction 16 offered. The jury's finding that a reasonable person could have believed the threat would be carried out had ample support in the evidence. Such a conclusion was justified by the language and tone of the letter and by the reaction of the governor's secretary, who apparently believed it constituted a serious threat and merited immediate action. Instruction 14 did not correctly state the law but defendant has failed to show prejudice. If anything, instruction 14 rendered the State's burden more difficult.

II. Defendant also challenges trial court's finding at the pretrial competency hearing, ordered pursuant to section 812.3, The Code, that she was competent to stand trial.

■ Contrary to defendant's assertion, we do not review the evidence de novo where a determination of competency has been made below. That is the case only where no hearing is held below and we are examining the propriety of trial court's determination that no hearing was necessary. *See State v. Kempf,* 282 N.W.2d 704, 707 (Iowa 1979). Rather, the question of competency is for the trier of fact where there is a conflict in the testimony at the competency hearing and defendant challenges that determination on appeal. *State v. Drosos,* 253 Iowa 1152, 1156–57, 114 N.W.2d 526, 528–29 (1962); *State v. Berry,* 241 Iowa 211, 223, 40 N.W.2d 480, 487 (1950). Nor are we concerned with the procedural aspects of the competency hearing. *See State v. Lyon,* 293 N.W.2d 8, 12 (Iowa 1980). Our inquiry is limited to whether there is support in the record for the competency finding. *Cf. In re Oseing,* 296 N.W.2d 797, 801 (Iowa 1980).

■ Defendant had been hospitalized in mental facilities intermittently since 1975. The expert witnesses who testified at the hearing disagreed. Defendant's expert, a psychiatrist at Broadlawns Polk County Hospital, had examined defendant during her evaluation in the psychiatric unit following an armed robbery conviction. This witness described defendant as delusional, and therefore psychotic. He found she had experienced auditory hallucinations, and he had diagnosed her condition as chronic paranoid schizophrenia. He also stated she had improved, and that although she would "have some difficulties" helping in preparation of her defense, she understood the legal process and the consequences of the charges against her. He did not state defendant's condition would prevent her from assisting in her defense, and admitted that due to treatment defendant's ability to comprehend what was transpiring at trial had progressed to a "gray area." He also admitted it would be possible for a patient to "fake" psychotic symptoms and thereby to convince a doctor he or she was psychotic when in fact that was not the case.

A staff psychiatrist at the Oakdale facility, testifying for the State, opined defendant was competent to stand trial, understood the nature and consequences of the charges, and "if she wants to she can cooperate with counsel in the presentation of her defense." In his opinion defendant was "fabricating," and was not in fact schizophrenic.

A second defense witness, a social worker at Broadlawns, related defendant's background of erratic behavior, and stated defendant claimed she heard voices. He also testified there was no way he could determine if defendant's claim was accurate.

This evidence supports trial court's determination of competency, despite the two psychiatrists' differing diagnoses. Both agreed defendant understood the nature and consequences of the charges. The defense psychiatrist testified only that defendant might have "difficulties" in assisting in her defense, not that her condition prevented her from rendering such assistance.

Defendant also asserts trial court erred in overruling her oral motion to reconsider her prior motion to declare her incompetent to stand trial. Her counsel submitted this motion on the record made in the prior competency hearing, and stated there was no additional evidence and no claim her condition had changed in the intervening thirty-four days.

■ Once a defendant is found competent, the presumption of competency continues until contrary evidence is produced. *See State v. Thomas,* 205 N.W.2d 717, 721 (Iowa 1973). Defendant asserts, however, that the question of competency is always open, citing *Kempf,* 282 N.W.2d 704. It is true that a defendant may present evidence of incompetency at any point in the proceedings. But after an adjudication of competency, new or additional evidence must be produced by defendant to overcome the presumption of competency the law imposes. In the absence of such additional proof, the trial judge was not obliged to reconsider the same evidence upon which the competency hearing judge had already

determined defendant was competent to stand trial. *Kempf* only addressed trial court's continuing duty to consider evidence of incompetency that was not presented previously due to trial court's failure to hold a competency hearing. *Id.* at 706–07. Here, a pretrial competency hearing was held, and the competency issue decided adversely to defendant. Thus, no "unresolved question" of defendant's competency existed until defendant produced evidence to generate such a question. *See id.* at 707. In the absence of additional evidence, trial court properly relied on the competency hearing court's determination.

AFFIRMED.