**IN THE COURT OF APPEALS OF IOWA**

No. 14-1447
Filed March 25, 2015

**Upon the Petition of**
**MICHELLE LEE LANDHUIS,**
    Petitioner-Appellee,


**And Concerning**
**TROY WAYNE SCHULTZEN,**
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Cherokee County, Nancy L. Whittenburg, Judge.


    Appellant appeals from a domestic abuse protective order issued pursuant to Iowa Code chapter 236 (2013).  **REVERSED AND REMANDED.**


    Angela H. Kayl Of Kayl Law Office, Sioux City, for appellant.

    Frank Cal Tenuta of Iowa Legal Aid, Sioux City, for appellee.


    Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

Troy Schultzen appeals from a final domestic abuse protective order issued pursuant to Iowa Code Chapter 236 (2013) and the district court's ruling and order denying Schultzen's motion to reopen the record and reconsider the protective order. The challenged protective order limits Schultzen's contact with protected party Michelle Landhuis, Schultzen's former spouse. The challenged protective order also modifies the parties' decree of dissolution of marriage, granting Michelle temporary custody of the parties' two minor children and granting visitation to Troy. On appeal, Troy contends there is insufficient evidence he committed an assault, a finding prerequisite to issuance of a chapter 236 protective order. He also contends the district court lacked jurisdiction to modify the parties' custody arrangement. Finally, he contends the district court's ex parte interview of Troy's minor son over Troy's objection violated Troy's constitutional right to due process.

I.

The parties formerly were married and are the parents of two minor children. Troy resides in Van Meter, and Michelle resides in Cherokee. The distance between Van Meter and Cherokee is approximately 160 miles. Pursuant to a stipulation and agreement to modify the parties' decree of dissolution of marriage, the parties have joint legal custody of the children, and Troy has physical care of both children. Michelle was granted visitation, including two weeks' summer visitation.

On July 10, 2014, Troy and Michelle spent several hours arguing over the phone and via text message about whether Michelle could pick up the children that night to commence either a weekend visitation or her two-week summer visitation. Troy decided that he would not allow Michelle to pick the children up that night because she would not be at his house until 11:00 p.m., which meant that the children would not be back at Michelle's house until 2:00 or 3:00 a.m. Troy testified that Michelle said in response, "Well, I'm going to come there, break into the house, take the kids and kill you." Michelle denied making this statement, testifying she said she was merely going to drive to his house and honk the horn to signal for the children to come out. Troy hung up the phone and ended the conversation.

After that phone call, Michelle called Troy again. According to Troy, Michelle once again threatened that she was going to drive to his house that night, take her children, and kill Troy and his wife and their son, B.S. Troy testified that he replied, "If somebody breaks into my house, I will have my 40 cal out." Michelle and her friend, who was listening on speaker phone, testified that Troy said, "I'm going to put an F'ing bullet between your F'ing eyes" or something similar. The parties dispute who hung up the phone, but it is not disputed the telephone call terminated at this point. At some point later in the evening, the parties spoke or texted again and made arrangements to exchange care of the children the next day.

The next day, the parties met in Harlan to exchange care of the children. The exchange occurred without incident and without the involvement of law

enforcement. Michelle filed her petition for relief from domestic abuse on July 16, 2014, six days after the phone call and five days after the exchange. The district court issued a temporary protective order and then the final domestic abuse protective order at issue in this appeal. The final domestic abuse protective order modified the stipulated physical care arrangement by granting Michelle temporary physical care of the parties' children.

II.

We review a civil domestic abuse proceeding tried in equity de novo. *See Knight v. Knight*, 525 N.W.2d 841, 843 (Iowa 1994). We examine both the law and the facts, and we adjudicate anew those issues properly preserved and presented for appellate review. *See Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001). We give weight to the district court's findings, particularly its credibility determinations, but our obligation to adjudicate the issues anew means that we must satisfy ourselves the petitioning party has come forth with the quantum and quality of evidence sufficient to prove the statutory grounds for issuing a protective order. *See id.* at 594.

A party seeking a protective order pursuant to chapter 236 must prove by a preponderance of the evidence that a domestic abuse assault occurred. *See* Iowa Code §§ 236.4(1) ("[T]he plaintiff must prove the allegation of domestic abuse by a preponderance of the evidence."), 236.5 (providing that relief is available "[u]pon a finding that the defendant has engaged in domestic abuse"); *Wilker*, 630 N.W.2d at 596 (stating the burden of proof is a preponderance of the evidence); *Knight*, 525 N.W.2d at 843 (same). "Domestic abuse" means

"committing an assault as defined in Iowa Code section 708.1" where the victim and assailant have a relationship governed by chapter 236, such as an assault involving "family or household members" or the "parents of the same minor child." Iowa Code § 236.2(2).

As relevant here, Iowa Code section 708.1(2) defines assault as follows:

2. A person commits an assault when, without justification, the person does any of the following:
. . . .
b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

At issue is whether Michelle proved by a preponderance of the evidence that Troy intended to place Michelle in fear of "immediate physical contact" and that Troy had the "apparent ability to execute the act." In this context, "immediate" means "occurring without delay; instant." Black's Law Dictionary 751 (7th ed. 1999). The ability to execute the act must be apparent to the offender, not the victim. *See Bacon v. Bacon*, 567 N.W.2d 414, 418 (Iowa 1997). The apparent ability to execute the act means "that his expectations of placing another in fear must be reasonable." *State v. Braggs*, 784 N.W.2d 31, 37 (Iowa 2010) (citing *State v. Jackson*, 305 N.W.2d 420, 423 (Iowa 1981)).

On de novo review, we conclude there is insufficient evidence Troy committed an assault, within the meaning of chapters 236 and 708. Initially, it is hotly contested whether Troy ever made the alleged threat. Troy contends that it was Michelle who threatened him and that he responded by telling her he would call the police. Troy's version of the parties' conversation on the evening in question is corroborated, in part, by contemporaneous text messages. Michelle's

version of the parties' conversation suffers from several inconsistencies. Michelle is also the less credible of the two witnesses. Troy holds steady employment and has physical care of the children. Michelle lacks steady employment, lacks stable housing, and has been convicted of several theft offenses. At the time of this incident, she had not seen the children in over two months. At the time she filed her chapter 236 petition, she and Troy were disputing when Michelle was to return the children to his care. After Troy made repeated attempts to contact Michelle to resolve the situation, she directed a friend to respond to Troy via text message that Troy could no longer contact Michelle because she had sought a protective order.

Nonetheless, even assuming Michelle's recollection of events is believed, there is insufficient evidence of intent to place Michelle in "in fear of immediate physical contact" with the "apparent ability to execute the act." The threat was made over the telephone. At the time, Troy was in Van Meter, and Michelle was in Cherokee. The parties were 160 miles, and several hours by car, from each other. There was thus no possibility of immediate physical contact and, by extension, no reasonable fear of immediate physical contact. In similar circumstances, our courts have held threats made over the telephone or by text message did not constitute an assault due to the lack of immediacy and inability to execute the act. *See State v. Button*, 622 N.W.2d 480, 484 (Iowa 2001) ("Clearly, regarding a threat over the telephone, there is no immediate ability to carry out the threat when the speaker is not even physically present."); *Kiersch v. Kiersch*, No. 12-0289, 2012 WL 4101011, at * 1 (Iowa Ct. App. Sept. 19, 2012)

(reversing and remanding for dismissal of protective order where threatening messages were sent by text without other evidence of immediacy and apparent ability to execute the threat); *Speicher v. Rajtora*, No. 08-0769, 2009 WL 607497, at *1 (Iowa Ct. App. Mar. 11, 2009) (holding threatening telephonic communication where the parties were one to two miles apart was insufficient to establish immediacy and apparent ability to execute the act); *Pierson v. Mullenix*, No. 06-0555, 2006 WL 2873409, at *1 (Iowa Ct. App Oct. 11, 2006) (finding that phone calls were mere threats and not necessarily a threat to place another in fear). There is persuasive authority reaching the same conclusion. *See State v. Cashman*, 217 A.2d 28, 29 (Me. 1966) ("A threat, unlike an assault, is not limited by time or distance"); *Brower v. Ackerley*, 943 P.2d 1141, 1145 (Wash. Ct. App. 1997) (holding telephonic threats did not constitute an assault due to lack of immediacy of harm).

Michelle relies primarily on *Tilley v. Tilley*, No. 03-1177, 2004 WL 2579438, at *1 (Iowa Ct. App. Nov. 15, 2004), in which the court affirmed the issuance of a protective order following a telephonic threat. We conclude the case is distinguishable. First, the case was decided on error preservation grounds and not on the merits. *Id.* Second, in that case, the respondent admitted to a past history of threatening and abusive conduct establishing his propensity to execute on his threats. *Id.* There is not similar evidence in this case. Third, there is no indication in the *Tilley* case of the distance between the parties at the time of the threat. *See id.* Here, the parties were 160 miles, and three hours by car, from each other.

It should be said that we strongly condemn the conduct of both parties. Although the exact words exchanged with each other are greatly disputed, it seems readily apparent that both parties behaved inappropriately and acted inconsistently with their legal and parental obligations to work cooperatively to raise their children. Threats of any type, whether rising to the level of an assault or not, are simply impermissible. Going forward, the parties will have to set aside their differences and act in the best interests of their children.

III.

For the foregoing reasons, we reverse the judgment of the district court and remand this matter for dismissal of the protective order. We need not address the remainder of Troy's arguments because a finding of assault is a prerequisite to any relief afforded under chapter 236.

**REVERSED AND REMANDED.**