# IN THE COURT OF APPEALS OF IOWA

No. 17-1372
Filed August 15, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**PAUL JOSEPH HOPKINS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Monroe County, Lucy J. Gamon,

Judge.

Paul Hopkins appeals his conviction for extortion. **AFFIRMED IN PART,**

**REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant

Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

Paul Hopkins entered First State Bank in Albia and loudly and angrily demanded money. In his words, if he did not receive the money, "the whole town would burn."

The State charged Hopkins with extortion. *See* Iowa Code § 711.4(1)(a), 711.4(1)(g), 711.4(2) (2016). A jury found him guilty as charged. Hopkins filed a post-trial motion seeking to discharge his attorney. In response, his attorney moved to withdraw. After questioning Hopkins, the district court allowed him to represent himself in arguing his post-trial motion and at sentencing.

On appeal, Hopkins challenges (1) his trial attorney's failure to request a jury instruction defining the "threat" required for extortion and (2) the district court's colloquy to establish whether his post-trial waiver of his right to counsel was knowing, voluntary, and intelligent.

## I.    *Ineffective Assistance of Counsel – Jury Instruction*

The jury was instructed the State would have to prove the following elements of extortion:

> 1. On or about the 9th day of March, 2016, the defendant threatened:
>> a. To inflict physical injury on employees of First Iowa State Bank; or
>> b. To injure the property of First Iowa State Bank.
> It is not necessary that all jurors agree to just "a" or "b." It is only necessary that all jurors agree to at least one of the two alternatives.
> 2. The defendant communicated the threat towards employees of the First Iowa State Bank.
> 3. The threat was made for the purpose of obtaining something of value for the defendant or another person.

Hopkins contends his trial attorney was ineffective in failing to request the following jury instruction defining "threat":

> As used in Instruction No. 15 a "threat" is a promise of punishment, reprisal, or other distress. A "threat" need not be explicit and may arise out of innuendo or suggestion. All that is necessary is that the "threat" be definite and understandable to a reasonable person of ordinary intelligence and that a reasonable person would expect the "threat" to be carried out under the existing facts and circumstances.

To prevail, Hopkins must show (1) counsel breached an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We find the record adequate to address the issue. *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999).

Our de novo review reveals the following pertinent background. At trial, the State proposed the following instruction defining "threat:"

> As used in Instruction No. 15 a "threat" is a promise of punishment, of reprisal, or of other distress. Such a "threat" may arise out of innuendo or suggestion. All that is necessary is that the "threat" be definite and understandable to a reasonable person of ordinary intelligence.

Hopkins objected to the instruction on the ground it was "highly unnecessary and extremely prejudicial" and "in effect" attempted to "tailor an element of the offense to the defendant's detriment." His objection was successful. The district court declined to give the State's proposed instruction on the ground "threat" was "readily understandable without a definition."

Hopkins' objection and the court's ruling were consistent with precedent. *See State v. Crone*, 545 N.W.2d 267, 271 (Iowa 1996) (applying the ordinary dictionary definition of "threaten"); *see also State v. Gant*, 597 N.W.2d 501, 504-05 (Iowa 1999) (same); *cf. State v. Soboroff*, 798 N.W.2d 1, 8-9 (Iowa 2011)

(concluding defendant was prejudiced by counsel's failure to request a definition of threat under a different Code provision—section 712.8—where there was evidence the threat might not be taken seriously and was not intentionally disseminated); *State v. Virgil,* 895 N.W.2d 873, 881 (Iowa 2017) (noting "cohabitation" and "reside" have "specialized meanings under the Domestic Abuse Act that warrant definitional instructions to guide the jury"). The objection was also a reasonable strategic decision; Hopkins could have believed a "readily understandable" definition of threat rather than a legalistic definition would inure to his benefit. *See State v. Johnson*, 604 N.W.2d 669, 673 (Iowa Ct. App. 1999).

Hopkins acknowledges the State's proposed instruction to which he objected at trial is only "slightly different" from the one he now proposes. He rationalizes his about-face by citing the Iowa Supreme Court's holding in *State v. Jackson*, 305 N.W.2d 420, 422-25 (Iowa 1981), *overruled on other grounds by State v. Lyman*, 776 N.W.2d 865, 873 (Iowa 2010). The court there addressed a jury instruction addressing threats under our terrorism and extortion statutes. *Jackson*, 305 N.W.2d at 422. The court held both statutes focused on "the actor's intent, not on the victim's expectations." *Id.* at 423. The court also addressed whether there was sufficient evidence to support the jury's finding that "a reasonable person could have believed the threat would be carried out." *Id.* at 424.

Hopkins seizes on this discussion to support the last sentence of his proposed instruction: "a reasonable person would expect the 'threat' to be carried out under the existing facts and circumstances." But this language incorporates an element not present in the definition of extortion. Accordingly, counsel had no

duty to advocate for the added language. We conclude Hopkins' attorney was not ineffective in failing to offer the proposed jury instruction.

## II. Waiver of Right to Counsel

A defendant has a constitutional right to counsel at all critical stages of the criminal proceeding and the corollary right to self-representation. *See Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004) (providing right to counsel exists "at all critical stages of the criminal process"); *Faretta v. California*, 422 U.S. 806, 821 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."). Sentencing is a critical stage of the criminal process. *See State v. Boggs*, 741 N.W.2d 492, 506 (Iowa 2007). Before the district court accepts a self-representation request, the court must make the defendant "aware of the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States*, 317 U.S. 269, 279 (1942)); *Hannan v. State*, 732 N.W.2d 45, 55 (Iowa 2007).

Hopkins contends the district court allowed him to waive his right to counsel without ensuring the waiver was knowing, voluntary, and intelligent. Our review of this constitutional issue is de novo. *State v. Rater*, 568 N.W.2d 655, 658 (Iowa 1997).

The court engaged in the following colloquy with Hopkins:

> COURT: All right. Mr. Hopkins, you did say off the record that you wanted Mr. McCoy to withdraw and that you wanted to proceed representing yourself from this point out. Is that correct?
> HOPKINS: Yes.
> COURT: And are you making that decision knowingly and voluntarily?
> HOPKINS: Yes.

> COURT: Do you believe that you are fully capable of representing yourself for the judgment and sentence phase of this trial?
>
> HOPKINS: Yes.
>
> COURT: Do you believe you are fully capable of representing yourself on the motion for new trial that you have filed?
>
> HOPKINS: Yes.
>
> COURT: Sir, are you currently under the influence of any alcohol or prescription drugs or illegal drugs?
>
> HOPKINS: I am not.
>
> COURT: And let me ask you, Mr. McCoy. Mr. McCoy, do you believe that the defendant is competent to represent himself going forward?
>
> McCOY: I understand him to be, Your Honor.
>
> COURT: Okay. And, Mr. Hopkins, you understand you have the right to have counsel represent you. Do you understand that?
>
> HOPKINS: Yes.
>
> COURT: And it is your own free choice to proceed in this matter without counsel. Do you understand that?
>
> HOPKINS: Yes.
>
> COURT: Well, based on this informal colloquy, I am going to allow you to withdraw, Mr. McCoy.

The colloquy failed to ensure Hopkins understood the dangers and disadvantages of self-representation. *See Hannan*, 732 N.W.2d at 53 ("[E]ven if there was a cognizable colloquy, it fell far short of discussing the necessary constitutional concerns."). As Hopkins points out, the court did not inquire into [his] education or his level of comprehension"; ask about "his knowledge of the range of sentencing options available"; ask about "his understanding of the risks of self-representation"; or warn him "of the disadvantages of proceeding without counsel."

The State argues "there was less of a need for a searching inquiry" in a post-trial waiver of counsel. But the Iowa opinion cited for the proposition involved an uncounseled sentencing hearing preceded by a counseled guilty plea at which the defendant "was advised, in writing and in person . . . of the nature of the

charges, the possible punishments, and his procedural rights." *See State v. Harris*, No. 16-1139, 2017 WL 1735753, at *3 (Iowa Ct. App. May 3, 2017).

Similarly, an Eighth Circuit opinion cited for the same proposition involved a defendant with standby counsel at the sentencing hearing who was told he "'could consult with . . . counsel' as much as he pleased"; made "extensive use of" materials prepared by prior counsel at an earlier sentencing hearing; had sufficient prior contact with the criminal justice system to give him a general knowledge of the dangers and disadvantages of self-representation; and showed "a sophisticated understanding of the hearing's purposes and procedures." *See United States v. Day*, 998 F.2d 622, 626-27 (8th Cir. 1993).

*Day* is also inapposite because the Iowa Supreme Court has refused to consider some of the factors cited in that opinion. *See State v. Cooley*, 608 N.W.2d 9, 18 (Iowa 2000). In *Cooley*, the court held "a harmless error analysis cannot be utilized to cure the error incurred by an invalid acceptance of a defendant's waiver of the constitutional right to counsel and the resultant election to proceed with self-representation." *Cf. State v. Hardin*, No. 17-0595, 2017 WL 4050884, at *2 (Iowa Ct. App. Sept. 13, 2017) (concluding colloquy was sufficient where the district court advised Hardin "of the nature of the proceeding" and "that Hardin would be advantaged by retaining counsel during the sentencing proceeding and disadvantaged by representing himself"; "the sentencing hearing at issue was the third sentencing hearing in this case"; "there was only one statutorily authorized sentence available to the district court: a life sentence with the immediate possibility of parole"; Hardin previously went through a colloquy and signed a written waiver of counsel; and standby counsel was available); *State v. Leonard*,

No. 02-0120, 2003 WL 1968293, at *3 (Iowa Ct. App. Mar. 30, 2003) (upholding the defendant's waiver of right to counsel at the time of sentencing, concluding although "the penalty here is severe"; "the defendant has a long history of criminal activity and a history of pro se representation"; "[h]e was well aware of the charges leveled against him as evidenced by the several pro se motions he personally filed"; and "the only penalty that could be imposed was that which was set forth in the plea agreement.").

Even if we could consider the *Day* factors, such as a defendant's knowledge of the legal system, Hopkins lacked that knowledge. His arguments in support of his new trial motion failed to identify any legally cognizable grounds. And his statements at sentencing evinced a lack of understanding about the purposes underlying a sentencing hearing. Hopkins did not speak in mitigation of punishment other than to state he was innocent and did not question or discuss the presentence investigation report. We conclude "the failure of the trial court to conduct an adequate inquiry . . . results in reversible error." *State v. Stephenson*, 608 N.W.2d 778, 783 (Iowa 2000).

### III.    *Disposition*

We affirm the jury's finding of guilt, which was obtained with counsel. We reverse the uncounseled post-trial proceedings and remand for post-trial proceedings with the benefit of counsel or a knowing, intelligent and voluntary waiver of counsel.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**