# In the Iowa Supreme Court

---

No. 22–1188

Submitted September 12, 2024—Filed January 17, 2025

---

**State of Iowa,**

Appellee,

vs.

**Lukouxs Alan Brown,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Wright County, Gregg R. Rosenbladt, judge.

The defendant appeals from a district court order finding him competent to stand trial on the charge of murder in the first degree. **Decision of Court of Appeals Vacated; District Court Order Reversed and Case Remanded.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Melinda J. Nye (argued), Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Katherine Wenman (argued), Louis S. Sloven, and Kyle Hanson (until withdrawal), Assistant Attorneys General, for appellee.

**McDonald, Justice.**

Lukouxs Brown was charged with first-degree murder. The district court found that Brown was not competent to stand trial and ordered Brown to undergo mental health treatment designed to restore him to competency. After eight months of treatment, the treatment provider reported to the court that Brown remained not competent to stand trial and that there was no substantial probability that Brown could be restored to competency within a reasonable time. By statute, the district court was to hold a dispositional hearing on the matter within fourteen days of receiving the report. *See* Iowa Code § 812.8(4) (2021). Instead, the district court allowed the State more time to obtain a separate psychiatric evaluation. The competing psychiatric evaluation concluded that Brown was competent. The dispositional hearing was held more than ninety days from the date the treatment provider's report was filed. The district court found Brown competent to stand trial and reinstated the criminal proceedings. Brown filed this application for interlocutory appeal. The primary questions presented in this appeal are (1) what standard of review do we apply to the district court's competency determination and (2) whether the district court erred in allowing the State to obtain a separate psychiatric evaluation after receiving a report from Brown's treatment provider that there was no substantial probability that Brown could be restored to competency within a reasonable time.

I.

Brown was charged with first-degree murder after he allegedly cut the throat of and killed Wayne Smith, one of his coworkers at a pork processing plant, in February 2021. Prior to Brown's arraignment, his counsel met with him at the Wright County Jail. During that meeting, counsel observed that Brown

appeared to respond to outside stimuli not actually present. Brown stated that he had been hearing voices and that he had previously been hospitalized for schizophrenia. Counsel moved for a competency hearing on the basis that there was probable cause to believe Brown was not competent to stand trial. In the more formal language of the Code, there was probable cause to believe Brown suffered from a mental condition that made it impossible for him to appreciate the charges against him, understand the proceedings, or assist effectively in his own defense. *See id.* § 812.3(1). The State conceded there was probable cause to hold a competency hearing but did not concede Brown was not competent.

The district court found there was probable cause Brown was not competent to stand trial. The district court suspended the criminal proceedings and ordered Brown to undergo a psychiatric competency evaluation pursuant to Iowa Code section 812.3(2). The district court ordered the evaluation to be conducted at the Forensic Psychiatric Hospital at the Iowa Medical and Classification Center (IMCC). Dr. Arnold Andersen, an IMCC psychiatrist, conducted Brown's competency evaluation. He diagnosed Brown with a schizophrenia-like disorder and substance abuse disorders. Dr. Andersen concluded that Brown was not competent to stand trial because he could not appreciate the charges against him, effectively assist in his defense, or understand the legal proceedings in a meaningful manner. Dr. Andersen believed that Brown was a candidate for restoration treatment because there was a "good possibility" he could become competent to stand trial within a reasonable period of time.

After reviewing Dr. Andersen's report and conducting a hearing pursuant to Iowa Code section 812.4, the district court found Brown was not competent to stand trial and continued to suspend the criminal proceedings against him.

The district court also found Brown posed a danger to public peace and safety and committed him to IMCC for treatment designed to restore Brown to competency. *See id.* §§ 812.5(2), .6(2)(*a*).

Brown was admitted to the Forensic Psychiatric Hospital at IMCC in May under the care of psychiatrist Dr. Gary Keller. Dr. Andersen was also involved in the treatment and evaluation of Brown. Drs. Keller and Andersen routinely evaluated Brown and reported on his condition to the district court. *See id.* § 812.7. The mental status reports showed Dr. Keller formally diagnosed Brown with schizophrenia. The mental status reports also showed Brown "struggled" early in the treatment and had only "limited progress." For example, Dr. Keller noted Brown attempted to assault staff members at IMCC on two occasions. In his October report, Dr. Keller noted Brown assaulted a peer. Dr. Andersen noted Brown heard voices—specifically, the CIA.

The mental status reports also showed that after Brown's initial struggles and limited progress, Brown had "considerable improvement" in managing his schizophrenia. In November, Dr. Andersen reported that Brown no longer suffered from certain positive symptoms of schizophrenia, such as hallucinations and delusions. He reported, for the first time, that Brown was progressing toward eliminating the negative symptoms of schizophrenia. Dr. Andersen also reported, for the first time, that Brown could "effectively assist his defense attorney in preparing a case." In December, Dr. Andersen reported that Brown "appreciates in its essentials his charge and gives a reasonable estimate of a range of possible consequences." In the same report, Dr. Andersen concluded that Brown had a general factual understanding of key court personnel "with a few lacunae" and described Brown's schizophrenia as "in substantial remission."

In December, Drs. Andersen and Keller requested that Dr. John Bayless, a neuropsychologist and professor emeritus at the University of Iowa Medical School, assist them in evaluating Brown. Dr. Bayless assessed that Brown had a verbal IQ score of seventy-four, impairments in nearly all aspects of his intellectual abilities, and suffered from a major neurocognitive disorder. This led Dr. Bayless to conclude that Brown was not competent to stand trial. Around this time, Dr. Keller reported to the district court he believed "that within the next court period we will be able to offer our final recommendations on this patient."

Dr. Andersen filed his final report with the district court on February 1, 2022. Prior reports regarding Brown stated there was a "modest possibility," "a small possibility," "a moderately good possibility," and a "possible but far from certain" chance that Brown could be restored to competency within a reasonable time. In the February report, however, Dr. Andersen reported that Brown remained not competent to stand trial and was no longer a candidate for restoration. Specifically, Dr. Andersen's report noted Brown "ha[d] come a long way" but, despite "prolonged and intensive" treatment, could not assist his defense attorney "in even a modest or minimal manner," could not follow court proceedings, and did not have a rational understanding of key court personnel. Dr. Andersen thus concluded that Brown "lacks the capability of ever being restored to competency in any reasonable amount of time, with any currently available or known treatment options."

Upon receiving this notice, the court was required to "schedule a hearing to be held within fourteen days." *Id.* § 812.8(4). The district court started a hearing on February 11, ten days after receiving the notice. The State requested additional time to obtain an independent expert to evaluate Brown. Brown

resisted the motion for additional time. He raised due process concerns and argued that the Code did not allow the State to obtain a separate psychiatric evaluation at this stage of the proceedings. The district court granted the State an indefinite continuance to obtain a separate psychiatric evaluation. The district court stated it expected to "look at this again" in, "at maximum," three to four weeks.

More than one month later, on March 15, Brown filed a motion to dismiss the case. He argued that the hearing required under section 812.8(4) had not been held within the statutorily required fourteen days and that the State had failed to produce any report from their expert's evaluation of Brown. The State resisted. It argued a hearing had been held within the required time even though the hearing was not yet completed. The State also filed the report of their expert, Dr. Rosanna Jones-Thurman. The district court denied Brown's motion and scheduled a hearing for May 6.

At the May 6 hearing, the State called Dr. Jones-Thurman to testify. After reviewing the IMCC reports and conducting her own evaluation based on a short interview with Brown, Dr. Jones-Thurman concluded that Brown was competent to stand trial. She assessed that Brown had a verbal IQ score of seventy-eight. This was four points higher than Dr. Bayless's assessment. Dr. Jones-Thurman opined that Brown knew he was accused of first-degree murder, understood basic legal terms, and had a general understanding of the people involved in the trial and their respective roles during trial. That latter assessment was contradicted, in part, by her report, which stated Brown "can't remember what the jury does and doesn't know exactly, but they might be like court jesters." Despite Brown's reported statement that he believed the jurors in his case "might be like court jesters," Dr. Jones-Thurman concluded Brown's competency had

been restored because he could appreciate the charges against him, adequately assist in his defense, and understand the legal proceedings.

Brown presented competing evidence. Drs. Andersen and Bayless testified at the May 6 hearing. They stood by their assessment that Brown was not competent to stand trial and was not likely to be restored to competency within a reasonable time. Additional testimony was provided by Brown's sister, who recounted an April 2022 phone call where Brown mentioned the CIA and hearing voices. The phone call was recorded and admitted into evidence. During the call, Brown discussed his plans to move to Oregon and go to culinary school upon being released from jail. He told his sister that he was communicating with his friend through the CIA. He said he communicated with the CIA in his head as "a jail type of thing." He mentioned something about the DEA, and he explained that the cartel was involved, which, according to Brown, is how the cartel stays connected with things.

The district court concluded the State met its burden in proving Brown's competence and ordered the criminal proceedings reinstated. The district court found the "reported conclusions by Dr. Rosanna Jones-Thurman are clear, concise, well-founded, and on point, and constitute very clear evidence that the defendant is competent to stand trial." The district court issued its order on June 17, more than four months after the status report stating that Brown was not capable of being restored was filed.

Brown filed an application for interlocutory appeal, which was granted. We transferred the case to the court of appeals. On appeal, Brown argued the district court erred in (1) finding he had been restored to competency, (2) allowing the State to seek a separate psychiatric evaluation, and (3) failing to hold a substantive hearing within fourteen days of Dr. Andersen's final report.

Pursuant to controlling authority, the court of appeals reviewed the district court's competency determination de novo. *See State v. Lyman,* 776 N.W.2d 865, 873 (Iowa 2010) ("[W]e review a trial court's decision as to a defendant's competency to stand trial de novo . . . ."), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.,* 880 N.W.2d 699 (Iowa 2016). On de novo review, the court of appeals found that Brown was not competent to stand trial but was progressing toward regaining competency. It reversed the district court and remanded the case with instructions to suspend the criminal proceedings and return Brown to IMCC for further treatment. One member of the court of appeals panel concurred specially, criticizing the de novo standard of review.

The State filed an application for further review arguing that this court should overrule its precedents regarding the standard of review applied to competency determinations. We granted the State's application. "On further review, we have the discretion to review any issue raised on appeal." *In re Est. of Cawiezell v. Coronelli,* 958 N.W.2d 842, 844 (Iowa 2021) (quoting *Burton v. Hilltop Care Ctr.,* 813 N.W.2d 250, 255 (Iowa 2012)). We exercise that discretion and limit our review to the questions of what should be the standard of review of competency determinations and whether the district court erred in permitting the State to obtain a separate psychiatric evaluation of Brown prior to the hearing required under Iowa Code section 812.8(4).

II.

"Constitutionally, defendants may not be tried or convicted while they are incompetent to stand trial or to assist in their defense. To deprive defendants of this right is to deprive them of due process and a fair trial." *State v. Edwards,* 507 N.W.2d 393, 395 (Iowa 1993); *see also Pate v. Robinson,* 383 U.S. 375, 378 (1966) ("[T]he conviction of an accused person while he is legally incompetent

violates due process . . . ."); *State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018) ("[T]he conviction of an incompetent defendant violates due process."). The United States Supreme Court established that an individual is competent to stand trial only if he has the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *see also Cooper v. Oklahoma*, 517 U.S. 348, 368 (1996) ("The test for competence to stand trial . . . is whether the defendant has the present ability to understand the charges against him and communicate effectively with defense counsel."). Under Iowa law, a defendant is not competent to stand trial if "the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense." Iowa Code § 812.3(1).

Traditionally, this court has held that whether a defendant was competent was a question of fact subject to review for the corrections of errors at law, i.e., substantial evidence review. *See State v. Rieflin*, 558 N.W.2d 149, 151–52 (Iowa 1996) ("Our scope of review is for the correction of errors at law. . . . We do not review the evidence de novo where a determination of competency has been made by the district court."); *State v. Drosos*, 114 N.W.2d 526, 528 (Iowa 1962) (stating that it "is well settled" that a question of a criminal defendant's mental competency is for the jury). In 2010, in *State v. Lyman*, this court changed course, overruled its prior decisions, and held that Iowa's appellate courts should review competency determinations de novo. *See* 776 N.W.2d at 873 ("We believe . . . *Rieflin* [was] wrongly decided as to the standard of review required when this court reviews a defendant's pretrial hearing to determine his or her competence to stand trial.").

The State requests that we overrule *Lyman* and return to the errors at law standard. We decline this request. "Stare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law." *Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015). A compelling reason requires "the highest possible showing that a precedent should be overruled" and "that the precedent is clearly erroneous." *Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 249 (Iowa 2018) (quoting *McElroy v. State*, 703 N.W.2d 385, 394 (Iowa 2005)). This court is reluctant to overrule precedent unless the precedent has "proved unworkable in practice, does violence to legal doctrine, or has been so undermined by subsequent factual and legal developments that continued adherence to the precedent is no longer tenable." *Youngblut v. Youngblut*, 945 N.W.2d 25, 44 (Iowa 2020) (McDonald, J., dissenting).

The State has not convinced us that *Lyman* was clearly erroneous when decided. Prior to *Lyman*, our standard of review relating to competency determinations was "somewhat inconsistent." 776 N.W.2d at 871. In 1980, in *State v. Lyon*, we applied a de novo standard of review when the defendant's competency became an issue during trial "[b]ecause constitutional safeguards [were] implicated." 293 N.W.2d 8, 9 (Iowa 1980) (quoting *State v. Kempf*, 282 N.W.2d 704, 707 (Iowa 1979)). One year later, in *State v. Jackson*, we complicated matters as we stated, "[W]e do not review the evidence de novo where a determination of competency has been made below. That is the case only where no hearing is held below and we are examining the propriety of trial court's determination that no hearing was necessary." 305 N.W.2d 420, 425 (Iowa 1981). Later that year, in *State v. Pedersen*, we again used a de novo standard of review in evaluating the defendant's competency at trial "anew" because due process

was at stake. 309 N.W.2d 490, 495–96 (Iowa 1981). This hair-splitting led to seemingly inconsistent jurisprudence for approximately thirty years. *See, e.g.,* *Rieflin,* 558 N.W.2d at 151–52 ("We do not review the evidence de novo where a determination of competency has been made by the district court. . . . We only review the record de novo where no competency hearing is held below, and we are examining the propriety of the district court's determination that no hearing was necessary."); *State v. Emerson,* 375 N.W.2d 256, 260–61 (Iowa 1985) (reviewing pretrial competency determination de novo after the case had proceeded through trial because due process rights were implicated), *abrogated on other grounds by Horton v. California,* 496 U.S. 128 (1990); *State v. Aswegan,* 331 N.W.2d 93, 95 (Iowa 1983) (stating that because the defendant did not raise a due process challenge regarding pretrial competency hearing, the standard of review is not de novo).

*Lyman* definitively adopted a de novo standard of review and ended the immaterial distinctions in our caselaw. 776 N.W.2d at 873. *Lyman* provided a bright-line rule that "[w]e review de novo a district court decision implicating a defendant's constitutional rights, even if the district court held a full hearing on the matter below." *Id. Lyman* was and is consistent with our court's now-typical practice of reviewing de novo decisions implicating constitutional rights. *See, e.g., State v. Miller,* ___ N.W.3d ___, ___, 2024 WL 4469195, at *6 (Iowa Oct. 11, 2024) ("We review [defendant]'s constitutional challenges to his sentence de novo."); *State v. Arrieta,* 998 N.W.2d 617, 620 (Iowa 2023) ("We review the district court's denial of a motion to suppress based on deprivation of a constitutional right de novo."); *State v. Liggins,* 978 N.W.2d 406, 417 (Iowa 2022) ("Ordinarily, when constitutional issues are involved, we have repeatedly stated over decades of cases that our review is de novo."); *State v. Cahill,* 972 N.W.2d 19, 27 (Iowa

2022) ("Due process claims asserting a *Brady* violation are reviewed de novo."); *State v. Montgomery*, 966 N.W.2d 641, 649 (Iowa 2021) ("We apply a de novo standard of review to . . . the Sixth Amendment right to confrontation." (citation omitted)); *State v. Roby*, 951 N.W.2d 459, 463 (Iowa 2020) ("We review constitutional double jeopardy claims de novo."); *State v. Veal*, 930 N.W.2d 319, 327 (Iowa 2019) (reviewing "claims of systematic exclusion of a distinctive group from the jury pool in violation of the Sixth Amendment" and *Batson* challenges de novo); *State v. Ortiz*, 905 N.W.2d 174, 179 (Iowa 2017) ("Our review of claims of ineffective assistance of counsel is de novo."); *Lyman*, 776 N.W.2d at 873 (collecting cases).

The State correctly points out that our de novo review of a district court's competency determination makes Iowa an outlier jurisdiction. *See State v. O'Neill*, 945 N.W.2d 71, 82 (Minn. Ct. App. 2020) ("Except for Iowa, . . . we have found no jurisdiction applying a de novo, fact-reweighing approach on appellate review."). The point is immaterial. We do not shape our jurisprudence based upon "a majoritarian numbers game." *State v. Hauge*, 973 N.W.2d 453, 466 (Iowa 2022) (quoting *State v. Gaskins*, 866 N.W.2d 1, 33 (Iowa 2015) (Appel, J., concurring specially)). While we can learn from observing what other jurisdictions do in similar circumstances, we have no obligation to follow the law of other jurisdictions and harmonize our law with theirs. Instead, it is our obligation to ensure that the corpus of Iowa law is internally consistent and coherent. *Lyman* is consistent with and coheres with the corpus of Iowa law involving the review of constitutional questions, generally.

Nor has the State established that *Lyman* has proved unworkable or has done such violence to the state of the law that it must be overruled. *See Youngblut*, 945 N.W.2d at 44. While we are mindful of certain advantages the

district court has in making these difficult competency determinations, Iowa's appellate courts have great experience in conducting de novo review of factual determinations without much difficulty. Indeed, since *Lyman*, Iowa's appellate courts have reviewed competency determinations de novo without much difficulty. *See, e.g., Veal*, 930 N.W.2d at 337–38; *State v. Wadsworth*, No. 16–1775, 2018 WL 2230666, at *4–10 (Iowa Ct. App. May 16, 2018).

We decline the State's request to overrule *Lyman*. The de novo standard of review on what is, essentially, a legal question best protects the defendant's constitutional right to be tried only when competent to stand trial. *See Ornelas v. United States*, 517 U.S. 690, 704 (1996) (Scalia, J., dissenting) ("The prime benefit of *de novo* appellate review in criminal cases is, of course, to prevent a miscarriage of justice that might . . . rest upon the legal determinations of a single judge."). The de novo standard of review is consistent with our caselaw, generally, regarding the review of constitutional questions. And the standard of review has not proved unworkable in practice. We thus reaffirm our holding that "we review a trial court's decision as to a defendant's competency to stand trial de novo." *Lyman*, 776 N.W.2d at 873.

### III.

We now turn to the question of whether Iowa Code chapter 812 permits the state to obtain a separate psychiatric evaluation after the district court receives notice from the treatment provider regarding the defendant's competency pursuant to section 812.8. The district court concluded that the State was entitled to obtain a separate psychiatric evaluation in this context. In reaching that conclusion, the district court relied on language from section 812.3(2), which provides that "[a]ny party is entitled to a separate psychiatric evaluation by a psychiatrist or licensed, doctorate-level psychologist

of their own choosing." We conclude the district court erred in its interpretation of the statute.

Because the question presented is one of statutory interpretation and construction, we begin with the text of the statutes at issue. *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). "[W]e read statutes as a whole rather than looking at words and phrases in isolation." *Id.* at 613 (alteration in original) (quoting *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Just.*, 867 N.W.2d 58, 72 (Iowa 2015)). "Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." *Id.* at 610 (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012)).

When we look at the structure and text of Iowa Code chapter 812, it becomes clear that the chapter sets forth section by section, a step-by-step process for raising, regulating, and resolving issues regarding the defendant's competency to stand trial. Chapter 812 begins with section 812.3, which sets forth who may raise an issue regarding the defendant's competency and how. As relevant here, section 812.3(1) provides that if the defendant or the defendant's attorney "alleges specific facts showing that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, the court shall suspend further proceedings and determine if probable cause exists to sustain the allegations." Section 812.3(2) then details what the district court must do if it finds there is probable cause to believe that the defendant is not competent. If the district court finds probable cause to believe the defendant is not competent to stand trial, then it "shall suspend further

criminal proceedings and order the defendant to undergo a psychiatric evaluation." *Id.* § 812.3(2). At the probable cause stage of the proceedings, "[a]ny party is entitled to a separate psychiatric evaluation by a psychiatrist or licensed, doctorate-level psychologist of their own choosing." *Id.*

The successive sections of chapter 812 dictate the next steps in the process. Section 812.4 regulates the competency hearing after the district court receives the psychiatric evaluation required by section 812.3. Section 812.5 governs the district court's dispositional options after holding the competency hearing required by section 812.4. If the district court finds the defendant competent, then the criminal proceedings are reinstated. *Id.* § 812.5(1). If the district court finds the defendant not competent to stand trial, then the criminal proceedings are suspended indefinitely, and the district court shall "order the defendant to be placed in a treatment program pursuant to section 812.6." *Id.* § 812.5(2). Section 812.6 provides the district court with options for mental health treatment for the defendant. Section 812.7 requires the treatment providers or the director of the facility where the defendant is being treated to provide periodic mental health status reports to the district court.

The conclusion of the restoration process is governed by sections 812.8 and 812.9. Where, as here, the treatment providers conclude "that there is no substantial probability that the defendant will be restored to competency in a reasonable amount of time, the psychiatrist or licensed doctorate-level psychologist providing outpatient treatment to the defendant or the director of the inpatient facility shall immediately notify the court." *Id.* § 812.8(3). When the district court receives such notice, the district court "shall schedule a hearing to be held within fourteen days." *Id.* § 812.8(4). Section 812.8, subsections (5)–(8), provide the district court's disposition options following the 812.8(4) hearing. If a

preponderance of the evidence shows the defendant's competency has been restored, the criminal proceedings are reinstated. *Id.* § 812.8(5). If a preponderance of the evidence shows that "the defendant remains incompetent to stand trial but is making progress in regaining competency," the court is required to continue the placement. *Id.* § 812.8(6). And if a preponderance of the evidence shows that "there is no substantial probability the defendant's competency will be restored in a reasonable amount of time, the court shall terminate the commitment . . . in accordance with the provisions of section 812.9." *Id.* § 812.8(8).

Section 812.9 then establishes the time at which restoration treatment must be terminated. Specifically, defendants "shall not remain under placement . . . beyond the expiration of the maximum term of confinement for the criminal offense" for which they are accused of committing. *Id.* § 812.9(1). And a criminal defendant shall not remain under placement if "the court finds by a preponderance of the evidence that there is no substantial probability that the defendant will be restored to competency in a reasonable amount of time under section 812.8, subsection 8." *Id.* However, if neither of these occurs within eighteen months of commitment, the court is required to schedule a hearing and determine whether the defendant is competent at that point. *Id.* § 812.9(2). If the defendant is not yet competent, the court must terminate the placement. *Id.* The state may then commence civil commitment proceedings. *Id.* § 812.9(3). If it appears the defendant later regains competency, "the state may make application to reinstate the prosecution," and the district court shall hold a competency hearing as it would under section 812.8(4). *Id.* § 812.9(4).

After examining the structure and text of chapter 812, it becomes clear the district court erred in granting the State's request for a separate psychiatric

evaluation for the hearing required by section 812.8(4). The Code explicitly allows the parties to obtain a separate evaluation at the probable cause stage of the proceedings as set forth in section 812.3(2). However, there is no parallel provision in relation to the dispositional hearing required by section 812.8(4). We can infer from that omission that the statute does not allow for a separate evaluation at the dispositional stage of the restoration process. *See Vagts v. N. Nat. Gas Co.,* 8 N.W.3d 501, 516 (Iowa 2024) (discussing "the well-established rule[] of statutory construction that legislative intent is expressed by omission as well as by inclusion, and the express mention of one thing implies the exclusion of others not so mentioned" (quoting *Marcus v. Young,* 538 N.W.2d 285, 289 (Iowa 1995))).

A separate psychiatric evaluation at the dispositional stage of the proceedings is also inconsistent with the structure and purpose of chapter 812. After the district court finds that a defendant is not competent to stand trial, the district court must order the defendant to undergo treatment for the purpose of restoring the defendant to competency. *See* Iowa Code §§ 812.5(2), .6. The defendant's treatment providers have superior knowledge regarding the defendant's mental health, and they are obligated to regularly report on the defendant's condition to the district court. *See id.* § 812.7. In other words, the treatment is performed by a neutral treatment provider at the court's direction to assist the court in restoring the defendant to competency. There is no indication in the Code that the experience and judgment of the professionals directed by the court to restore the defendant to competency should then be challenged in front of the very court that directed the treatment. In addition, it is highly unlikely there will be any better medical evidence regarding the

defendant's competency than the evaluations performed by the neutral physicians who treated the defendant.

The timing of the dispositional hearing also cuts against the State's interpretation of the statute. Iowa Code section 812.8(4) envisions a short process rather than a long one. The Code directs that the dispositional hearing shall be held within fourteen days of the district court receiving notice that the defendant is not likely to be restored to competency within a reasonable time. *See id.* § 812.8(4). The length of time required to conduct a separate psychiatric evaluation, draft and file a report with the court, and schedule a subsequent hearing at this stage is entirely at odds with this fourteen-day requirement. *See State v. Lopez*, 907 N.W.2d 112, 120 (Iowa 2018) ("In interpreting the statute, we also consider the overall structure and context of the statute, not just specific words or phrases in a vacuum."); *Rolfe State Bank v. Gunderson*, 794 N.W.2d 561, 564 (Iowa 2011) ("The overall structure of a statute can have strong influence on the meaning of particular words and phrases.").

The facts of this case highlight how difficult it would be to comply with the fourteen-day requirement if the parties were also entitled to a separate psychiatric evaluation at this stage. On February 1, 2022, Dr. Andersen's final report was filed in the district court. This triggered a fourteen-day deadline to hold a hearing regarding the restoration of Brown's competence. *See* Iowa Code § 812.8(4). A hearing of some sort commenced on February 11. However, the district court granted the State an indefinite amount of time to allow the State to retain Dr. Jones-Thurman's services. Dr. Jones-Thurman traveled to Wright County to evaluate Brown a little over a week later. Dr. Jones-Thurman then took several weeks to draft a report based on her short meeting with Brown. The State then filed her report with the district court. The prior hearing was not

resumed until May 6, more than three months after the district court first received notice regarding Brown's mental health status. The district court did not issue its order until the following month. The long delay in resolving the competency issue in this case demonstrates why the structure and process set forth in chapter 812 preclude the parties from obtaining a separate psychiatric evaluation at this stage of the proceedings.

We thus hold that the Code does not authorize either party to hire an independent expert to perform a separate psychiatric evaluation at the dispositional phase of competency proceedings as set forth in Iowa Code section 812.8. The language in Iowa Code section 812.3(2) allowing the parties to obtain a "separate psychiatric evaluation" is limited to that section of the Code in which it is contained—the probable cause proceedings governed by section 812.3. Once the district court has ordered treatment for the purposes of restoration, the district court can obtain sufficient information from neutral medical experts to dispose of the matter. The district court erred in allowing the State to obtain a separate evaluation and in considering the separate evaluation at the dispositional phase of the proceedings.

IV.

On our de novo review of the appropriate record, we conclude a preponderance of the evidence showed that there is no substantial probability that Brown's competency will be restored within a reasonable amount of time. *See* Iowa Code § 812.8(8). We thus remand this matter for further proceedings pursuant to Iowa Code section 812.9(3).

**Decision of Court of Appeals Vacated; District Court Order Reversed and Case Remanded.**