# IN THE COURT OF APPEALS OF IOWA

No. 14-1650
Filed August 19, 2015

**KEELIN MARIE SHANNON,**
Plaintiff-Appellee,

**vs.**

**SCOTT ALAN BAUMGARTNER,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Stephen B. Jackson Jr., Judge.

The subject of a domestic abuse protective order challenges the sufficiency of the evidence offered by the protected party to show an assault. **REVERSED AND REMANDED**.

Constance Peschang Stannard of Johnston, Stannard, Klesner, Burbidge & Fitzgerald, P.L.C., Iowa City, for appellant.

Keelin M. Shannon, Iowa City, appellee pro se.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, P.J.**

Scott Baumgartner appeals a final domestic abuse protective order prohibiting him from having contact with Keelin Shannon, the mother of his eight-year-old daughter. Scott argues Keelin did not prove he committed an assault as defined in Iowa Code section 708.1(2) (2013). After reviewing the record, we find insufficient evidence that Scott acted with the intent to place Keelin in fear of immediate physical contact or had the apparent ability to execute the act. Accordingly, we reverse the district court judgment and remand for dismissal of the protective order.

## I. Background Facts and Proceedings

Scott and Keelin have a daughter in common; S.B. born in 2006. That same year, Keelin suffered a head injury when she fell from the hood of Scott's moving car. Keelin and Scott offered the district court very different versions of that incident, but they agreed Scott was not charged with any crime relating to Keelin's injury.

By 2014, the parties had a visitation schedule in place. S.B. lived with Keelin in Iowa City and Scott travelled from East Moline, Illinois, to exercise weekend visitation. On August 15, 2014, Scott's wife and mother picked up S.B. for visitation from a drug store in Iowa City, as directed by Keelin. On August 17, Scott returned S.B. to Keelin's house, but found Keelin was not home. He found out by text message that Keelin wanted him to drop S.B. off at the same location where she was picked up. On August 19, Scott came to S.B.'s school to pick her up for a doctor's appointment in the Quad Cities. School officials contacted

Keelin to clarify whether they had the authority to release S.B. to her father. Police also were called to the school.

That same day, August 19, 2014, Keelin filed a pro se petition for relief from domestic violence. In response to the form question asking her to "[d]escribe the most recent injury . . . and/or threats," Keelin wrote "Scott &/or his wife was seen @ my house when we had arranged to meet elsewhere on 8/15 & 8/17/2014." Keelin further wrote that due to "the violent & threatening history" between them, she was scared for her safety. She continued: "He often makes comments like 'I should have finished you off then.'" She then mentioned her 2006 head injury, and stated: "since then Scott refers to this incident and tosses out threat like 'I should have ended you' or 'you know what happens when you cross me.'" She asserted those statements caused her "fear of injury." The court issued a temporary order on August 19.

On the question of a permanent order, the district court heard evidence from the parties on September 2, 2014. Both Keelin and Scott testified. Scott was represented by counsel, but Keelin appeared pro se.

Keelin testified she received repeated threats from Scott "on several different occasions over the last many years, including very recent times." She testified regarding the 2006 "car accident between him and myself" and generally about several other acts of violence he perpetrated when they were together before 2006. She further testified that she had seen Scott driving by her house on several occasions, adding "it's unnecessary for him to be at my house or be by my house. And I even saw him in a stalking manner on my way on the 19th

from the school to the courthouse to file for the no contact order." She also said she had text messages from him saying he was at her house, but she declined to offer them into evidence. On cross-examination, Keelin testified she "didn't fully feel afraid for [her] life until his stalking manners on the 19th." She testified she decided to file the petition for protection when she "was looking back over the events of the recent past and reprocessing them and things started to set in when I left the school."

In his testimony, Scott denied making threats toward Keelin. He also testified he had not had any physical contact with her within the last five years. He believed Keelin was seeking the protective order for the improper purpose of limiting his visitation with S.B. On cross-examination, Scott did not deny saying demeaning things to Keelin by text message.

On the day after the hearing, September 3, 2014, the district court issued a final domestic abuse protective order. The court concluded Scott committed domestic abuse assault against Keelin. The court found Keelin "testified credibly that she had recently received threats of physical harm" from Scott and "that, coupled with a history of altercations between the parties, [she] was placed in fear of immediate offensive physical contact." The court found Keelin to be genuinely afraid of Scott, noting:

> the Court had the opportunity to observe the Protected Party and the Respondent and observed the Protected Party, when testifying and when she was cross-examining the Respondent, exhibit behaviors indicating that her fear was real. The Protected Party was trembling, shaking and crying as she testified. Based on the Court's observations of the parties, the Court finds that the Respondent's actions were intended to place the Protected Party in

fear of immediate physical contact and, therefore, constitutes a domestic abuse assault.

Scott now appeals. In his appellant's brief, he seeks dismissal of the protective order. Keelin did not file an appellee's brief.

## II. Scope of Review

Our review is de novo. *Knight v. Knight,* 525 N.W.2d 841, 843 (Iowa 1994). That standard means, after examining both the facts and the law, we adjudicate anew those issues properly preserved and presented for appellate review. *Wilker v. Wilker,* 630 N.W.2d 590, 594 (Iowa 2001). We give weight to the district court's findings, particularly its credibility determinations, but our obligation to adjudicate the issue anew means we must satisfy ourselves the petitioning party has offered the quantum and quality of evidence sufficient to prove the statutory ground for issuing a protective order. *Id.*

## III. Domestic Abuse Assault Analysis

Under Iowa Code section 236.5(2), a court may grant a protective order "[u]pon a finding that the defendant has engaged in domestic abuse." The term "domestic abuse" means an "assault as defined in section 708.1" by one person against another person in a specified relationship. Iowa Code § 236.2(2). An assault between persons who are the parents of the same minor child is one such specified relationship. *Id.* § 236.2(2)(c). The person filing the petition for protection must prove the assault by a preponderance of the evidence. Iowa Code § 236.4(1); *Wilker,* 630 N.W.2d at 596. A preponderance of evidence supports a finding when such evidence is greater "in weight, influence, or force"

than the evidence supporting a different conclusion. *Walthart v. Bd. of Dirs. of Edgewood–Colesburg Cmty. Sch. Dist.*, 694 N.W.2d 740, 744 (Iowa 2005).

Scott contends Keelin did not prove an assault by a preponderance of the evidence. His brief argues "there is insufficient evidence that Scott did any act with the specific intent to place Keelin in fear of physical contact**."**

As relevant here, Iowa Code section 708.1(2) defines assault as follows:

> 2. A person commits an assault when, without justification, the person does any of the following:
>
> . . . .
>
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

The district court expressly found Keelin to be credible when she testified that Scott recently made "threats of physical harm." We defer to that credibility finding. The district court also concluded that in light of "a history of altercations between the parties," Scott's threats "placed Keelin in fear of immediate offensive physical contact." Even if we assume that finding to be correct, it does not satisfy the elements of an assault under section 708.1(2). Whether Keelin was afraid is not dispositive; "the focus of the assault statute is on the defendant, not the victim." *See State v. Keeton,* 710 N.W.2d 531, 535 (Iowa 2006). Keelin had the burden to show by a preponderance of the evidence that Scott *intended* to place her in fear of immediate physical contact which would be painful, injurious, insulting, or offensive. *See State v. Bedard*, 688 N.W.2d 598, 601 (Iowa 2003) (finding reasonable trier of fact could conclude defendant's attempt to strike an

officer while being detained was intended to place the officer in fear of immediate physical contact); *see also* Iowa Code § 236.2(2).

In her testimony, Keelin did not allege any recent face-to-face threats by Scott. Instead, she recounted a phone call in which he asked her to stop calling his wife "a bitch" and said Keelin knew "what will happen, insinuating about the incident before where [Keelin] received a brain injury." Keelin did not specify when that call took place or where the parties were at the time of the call. Accordingly, she is unable to show Scott's intent to place her in fear of *immediate* physical contact or Scott's apparent ability to carry out the threat with any immediacy. "It is well settled that mere words, even at short range, do not constitute an assault. The fact that the words were spoken over the telephone line would of itself quite negative the theory of assault." *Kramer v. Ricksmeier,* 139 N.W. 1091, 1091 (Iowa 1913) (citations omitted). Our court has found insufficient evidence to support a domestic abuse protective order when the only acts alleged are phone calls. *See, e.g.*, *In re Landhuis*, No. 14-1447, 2015 WL 1331854, at *3 (Iowa Ct. App. Mar. 25, 2015); *Pierson v. Mullenix*, No. 06-0555, 2006 WL 2873409, at *1 (Iowa Ct. App. Oct. 11, 2006).

The district court focused on Keelin's fear of Scott. While we do not question the genuineness of her emotions, a claim of "fear" standing alone and absent an assault, does not give rise to a claim for protection under chapter 236. *See Owens v. Owens*, No. 08-1374, 2009 WL 606590, at *3 (Iowa Ct. App. Mar. 11, 2009). Keelin's testimony may support a finding of harassment (*see* Iowa

Code § 708.7) or perhaps stalking (*see id.,* § 708.11). Remedies for such conduct may be available, but do not find their bases in chapter 236. *See id.*

We have examined the record and are unable to find evidence of an assault by Scott to support the district court's issuance of the protective order. We therefore reverse the decision of the district court and remand for dismissal of the protective order.

**REVERSED AND REMANDED.**