# IN THE COURT OF APPEALS OF IOWA

No. 20-1385
Filed November 3, 2021

**G.B.,**
    Petitioner-Appellee,

**vs.**

**J.V.,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano,
Judge.

J.V. appeals a final domestic abuse protective order issued under Iowa
Code chapter 236 (2020). **REVERSED AND REMANDED.**

Robert G. Rehkemper of Gourley, Rehkemper & Lindholm, P.L.C., West
Des Moines, for appellant.

Roger Hudson, West Des Moines, for appellee.

Considered by Bower, C.J., Vaitheswaran, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2021).

**DANILSON, Senior Judge.**

J.V. appeals a final domestic abuse protective order issued against him under Iowa Code chapter 236 (2020). He contends there was insufficient evidence that he had committed an assault to support the district court's finding of domestic abuse. Upon our review, we reverse and remand for cancellation of the protective order and dismissal of the petition for relief from domestic abuse.

## I.    *Background Facts and Proceedings*

J.V. and G.B. were previously married, and they share custody of their minor children. In August 2020, J.V. and the parties' son went to G.B.'s house to retrieve the child's football equipment prior to his practice. A conversation ensued between the parties at the front door of the home, during which G.B. stated she would not provide the equipment because she did not want the child playing football. J.V. refused to leave without the equipment, prompting G.B. to call 911 "for assistance" because J.V. wedged his foot inside the door and "physically did not allow [her] to shut [the] front door." Police arrived and dissipated the situation.

G.B. filed a petition for relief from domestic abuse under Iowa Code chapter 236. At the hearing on her petition, G.B. testified that upon J.V.'s "initial first push [on the door], the door came back, hit my foot, maybe like my shin." She stated J.V. kept his foot in the door as they both pushed against it for "maybe ten, fifteen minutes . . . till when police arrived on scene." When asked if she was "in fear for [her] safety," she testified, "Yes, I was," further explaining:

> Well, my last attempt to push the door is when then I took my foot and tried to push it against—I put my back against the door. I tried to push it against part of this wall, and at that point when I knew I was not going to overpower him, I was worried as he pushed back

that the door would come in and I would get struck or something would happen.
And just the verbal things that he was saying to me I was in fear because he was acting very irrationally.

J.V. acknowledged he put his foot in the door "on purpose" and G.B. "started getting mad because I wouldn't move my foot," but stated "there was nothing offensive about what I was doing."

Following the hearing, the district court concluded J.V. committed domestic abuse assault against G.B and issued a final domestic abuse protective order. J.V. appeals, seeking dismissal of the protective order. G.B. did not file a responsive brief on appeal.

## II.    Standard of Review

Our review is de novo. *Wilker v. Wilker*, 630 N.W.2d 590, 595 (Iowa 2001). We examine both the law and the facts, and we adjudicate anew those issues properly preserved and presented for appellate review. *Id.*

> We give weight to the district court's findings, particularly its credibility determinations, but our obligation to adjudicate the issues anew means that we must satisfy ourselves the petitioning party has come forth with the quantum and quality of evidence sufficient to prove the statutory grounds for issuing a protective order.

*In re Landhuis*, No. 14-1447, 2015 WL 1331854, at *2 (Iowa Ct. App. Mar. 25, 2015).

## III.    Analysis

A party seeking a protective order pursuant to chapter 236 must prove by a preponderance of the evidence that a domestic abuse assault occurred. *See* Iowa Code §§ 236.4(1) ("[T]he plaintiff must prove the allegation of domestic abuse by a preponderance of the evidence."), 236.5(1) (providing relief "[u]pon a finding that

the defendant has engaged in domestic abuse"). "Domestic abuse" is defined as an "assault" within the meaning of Iowa Code section 708.1 under specified circumstances, including where "[t]he assault is between persons who are parents of the same minor child." *Id.* § 236.2(c). Section 708.1, in turn, states in pertinent part:

> A person commits an assault when, without justification, the person [among other things] does any of the following:
> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

*Id.* § 708.1(2).

On appeal, J.V. contends there was insufficient evidence to support the district court's determination he committed an assault within the meaning of Iowa Code section 708.1. According to J.V., this is essentially a "trespassing" case, and G.B.'s "allegation that J.V. struck [her] with the door arose for the first time at the hearing on the final protective order." In speaking to law enforcement officers, G.B. never claimed she had been assaulted, struck, or touched and she "repeatedly described J.V.'s conduct as harassment, not assault." J.V. further argues, "Even if the court wishes to believe that physical contact between the door and [G.B.] occurred, [G.B.]'s evidence failed to establish that J.V. had the requisite intent to commit an assault." We find the final part of J.V.'s argument persuasive and conclude it warrants reversal of the protective order.

At the hearing, G.B. testified J.V. "was trying to intimidate and scare me," and he "was trying to get in" the house. She testified, "I was struck by the door.

With him pushing on the door, I was struck by the door." She further stated that J.V. "leaned his head in" the door and she felt threatened by him. She stated that when she called 911, "I was in trauma response because I was scared, and I was in fight-or-flight mode."

At the close of the evidence, the district court issued the following ruling:

> So the facts aren't really disputed here. [J.V.] went to the front door of [G.B.'s] home. The Court finds that the credible evidence in the case indicates that when the minor child left the home without the football helmet, which was the basis for this interaction and dispute, the child had left the home, and at that point [J.V.] puts his foot in the door to prevent [G.B.] from shutting the door because he wants the football helmet. I find that there's credible evidence based upon what the testimony has been in this case, that when [J.V.] put his foot in the door, that door went back and had contact with [G.B].
>
> I don't think there is anything in this record to indicate that there was any intent other than—or let me rephrase that. The evidence in this record indicates that there's no question in the Court's mind, or at least there's sufficient evidence in the Court's mind, that [J.V.] clearly knew that act to be offensive to [G.B]. There's just no—and it was clear that [J.V.'s] act in putting his foot in the door was intentional and his act in keeping his foot in the door and refusing to remove it until police arrived and told him to, the whole purpose of that was to continue this conduct towards [G.B]. It certainly placed her in fear of immediate physical contact.
>
> When you have someone with their foot in your door and you're trying to shut the door, the physical proximity of those people would clearly indicate that—[G.B.'s] testimony that she was in fear of contact which would be offensive to her, and it's clear from the proximity of the parties that [J.V.] certainly had the apparent ability to do that.
>
> I think under both alternatives, 708.1(2)(A) and (B), there is sufficient evidence by a preponderance of the evidence that there has been an assault committed in this case. For that reason, the Court does find that a domestic abuse protective order is appropriate at this time, and the Court will enter an order which will be in effect for a period of one year beginning September—or until September 30th of 2021.

Under these facts and circumstances, we do not concur in the district court's finding that an assault by J.V. occurred to support issuance of a protective order.

Specifically, we do not find J.V.'s acts intended to place G.B. in fear of "immediate physical contact." *See, e.g., Bacon v. Bacon*, 567 N.W.2d 414, 418 (Iowa 1997) (observing the ability to execute the act must be apparent to the offender, not the victim); *Shannon v. Baumgartner*, No. 14-1650, 2015 WL 4935711, at *3 (Iowa Ct. App. Aug. 19, 2015) ("While we do not question the genuineness of her emotions, a claim of 'fear' standing alone and absent an assault, does not give rise to a claim for protection under chapter 236."); *Hugill v. Hugill*, No. 19-1826, 2020 WL 2988233, at *2–3 (Iowa Ct. App. June 3, 2020) (finding insufficient evidence of an assault within the meaning of section 708.1 to support issuance of a protective order). In other words, this record does not support a finding that J.V. reasonably understood his acts placed G.B. in fear as he was solely wanting to enter to retrieve the child's football helmet. *See Henderson v. Mullenix*, No. 19-0626, 2020 WL 1049872, at *2 (Iowa Ct. App. Mar. 4, 2020) (stating that the apparent ability to execute the act means "that his expectations of placing another in fear . . . must be reasonable" (quoting *State v. Braggs*, 784 N.W.2d 31, 37 (Iowa 2010)); *but see Wilker*, 630 N.W.2d at 597 ("Although Paula attempts to downplay the event as an inconsequential incident, Timothy was clearly assaulted.").

We also note that the law enforcement officer investigating the incident only charged J.V. with trespassing and testified that G.B. never told him that she was struck by the door. Although the trespass was undoubtedly offensive to G.B., we do not view the act as intending to cause pain or injury or intending to place G.B. in fear of immediate physical contact. There is insufficient evidence of specific intent to commit assault by a preponderance of the evidence.

"Based on the record made at the district court, [J.V.]'s behavior was deplorable . . . , but it did not constitute an assault." *See Henderson*, 2020 WL 1049872, at *3. Accordingly, "we reverse the district court's decision to enter a final protective order and remand for cancellation of the protective order and dismissal of the petition for relief from domestic abuse." *Id.*

**REVERSED AND REMANDED.**