# IN THE COURT OF APPEALS OF IOWA

No. 21-0480
Filed January 12, 2022

**RACHEL MARIE WEBER HAUGO,**
        Petitioner-Appellee,

**vs.**

**JOSHUA SCOTT HAUGO,**
        Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Coleman McAllister, Judge.

A husband appeals the imposition of a civil no-contact order, alleging his wife did not establish he committed an assault. **AFFIRMED.**

Joshua Haugo, Ankeny, self-represented appellant.

Leslie Babich of Babich Goldman, P.C., Des Moines, for appellee.

Considered by Mullins, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Joshua Haugo appeals the imposition of a civil no-contact order in favor of his wife, Rachel Haugo.  He alleges Rachel did not establish he committed an assault.  We find Rachel established Joshua committed an assault by a preponderance of the evidence.  Accordingly, we affirm.

**I.      Facts & Prior Proceedings**

During the pendency of their dissolution proceedings, Rachel and Joshua resided at the house they shared along with their two minor children, operating under a stipulated temporary order.  The temporary order in the parties' dissolution proceedings allowed both parties to reside in the home and prohibited either party from "unreasonably" denying the use of the other party's vehicle.  The morning of March 4, 2021, Joshua underwent hand surgery.  He was placed under general anesthesia and given Percocet for the pain.  His last dose of Percocet was taken at home at about 1:30 p.m.

After returning home, Joshua texted Rachel, who was also at the home, requesting the use of her vehicle to pick up the children from daycare.  Rachel did not respond.  Joshua went up to their bedroom where Rachel was located and demanded Rachel answer his question.  A standoff ensued, with Joshua blocking the hallway for roughly forty-five minutes.  Joshua repeatedly requested that Rachel answer his question—whether he could use her vehicle.  At one point, he asked her the question roughly forty times in about ten minutes.  Rachel refused to answer the question directly.

The parties disagree on how to characterize the standoff.  Rachel testified that Joshua had an intense stare, was sweating, and would initiate physical contact

with Rachel by bumping her with his chest and shoulder, preventing her from getting past him. Rachel was recovering from a surgical procedure, had finished twenty weeks of chemotherapy, and was subject to a weight restriction. She stated that she was afraid of Joshua during the encounter, prompting her to take an audio recording of about ten minutes of the standoff. She also texted her friend and her mother to call the police. In contrast, Joshua claims he remained calm and simply wanted Rachel to answer his question. He also alleges that Rachel was the one bumping into him. Police eventually responded to the confrontation, although no charges were filed. An officer testified that Rachel appeared fearful after the incident.

Rachel petitioned for relief from domestic abuse on March 5, citing the encounter from the day before. After an initial ex parte hearing, a district court granted a temporary protective order on the same day. An evidentiary hearing occurred on March 19, 2021. Joshua, a licensed attorney, represented himself along with assistance from counsel. Joshua moved to dismiss the petition on the day of the hearing.

The court found in Rachel's favor and granted a final domestic abuse protective order under Iowa Code chapter 236 (2021). The order granted Rachel physical care of the children and possession of the marital home. The court noted that the custodial arrangement was intended to be a "stop gap measure" until the parties could fully litigate the matters in their divorce proceedings. The order provided Joshua visitation with the children. The order prohibited Joshua from contacting Rachel or the children, except as specified in the order, for one year,

and prohibited his possession of firearms.  Joshua later moved to reconsider, enlarge, or amend, which the court denied.  Joshua appeals.

## II.    Standard of Review

The parties disagree on the applicable standard of review.  Civil domestic abuse cases are heard in equity, and our review is de novo.  *Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001).  "Respectful consideration is given to the trial court's factual findings and credibility determinations, but not to the extent where those holdings are binding upon us."  *Id.*

"We examine both the law and the facts, and we adjudicate anew those issues properly preserved and presented for appellate review."  *Arens v. Arens*, No. 13-1421, 2014 WL 465801, at *3 (Iowa Ct. App. Feb. 5, 2014).  While we review the record anew, "we give weight to the district court's findings, particularly its credibility determinations."  *Id.*

## III.    Discussion

In challenging the district court's imposition of a no-contact order, Joshua claims that Rachel failed to prove he committed a domestic assault under Iowa Code section 708.1.[1]  He also raises two other claims we do not consider.[2]  Rachel requests appellate attorney fees.

---

[1] Joshua also alleges that the district court improperly denied his motion to dismiss, which was premised on the lack of an assault occurring.  Because we find that Rachel proved an assault occurred by a preponderance of the evidence, we need not address this argument.

[2] He also outlines two other issues presented for review:

> 3. Did the [d]istrict [c]ourt fail to meet its burden regarding finding the facts in writing and separately stating its conclusions of law and further failed to meet this burden when presented with the opportunity to do so in denying to [sic] [d]efendant's Motion to Reconsider, Amend, and/or Enlarge?

### A.     Assault

A party seeking a no-contact order under chapter 236 "must prove the allegation of domestic abuse by a preponderance of the evidence." Iowa Code § 236.4(1). Domestic abuse means "committing assault as defined in section 708.1" when the perpetrator and victim have a relationship governed by chapter 236.[3] Iowa Code § 236.2(2). Section 708.1(2) defines assault, in relevant part, as follows:

> A person commits an assault when, without justification, the person does any of the following:
> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

The district court found Joshua committed an assault under both Iowa Code section 708.1(2)(a) and (2)(b).

The parties contest the requisite intent necessary to establish an assault. Rachel contends that "Iowa Code § 708.1 defines assault as a general intent crime." In contrast, Joshua asserts it requires specific intent. Our case law is clear that "section 708.1(2) requires proof of specific intent." *Arens*, 2014 WL 465801, at *3 (citing *State v. Fountain*, 786 N.W.2d 260, 266 (Iowa 2010)). "Specific intent

---

4. Did the [p]laintiff lie to and/or mislead the [c]ourt through her Petition for Relief from Domestic Abuse and therefore entitle [d]efendant to relief?

Because Joshua cited no authority for either issue, those claims have been waived, and we need not address them. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

[3] Both parties concede that they are in a relationship governed by the chapter.

is present when it is shown from the circumstances that the assailant subjectively desired the prohibited result." *Id.* Intent may be established by "circumstantial evidence and by inferences drawn from that evidence." *Id.* at *4 (quoting *State v. Nance*, 533 N.W.2d 557, 562 (Iowa 1995)). Courts may infer intent by considering the natural consequences of a party's actions. *In re Petition of Luebbers*, No. 20-1427, 2021 WL 4593171, at *3 (Iowa Ct. App. Oct. 6, 2021). "The focus 'is on the offender's intent, not the victim's expectations.'" *Arens*, 2014 WL 465801, at *4 (citation omitted). Further, the victim's fear is not dispositive. *Id.*

The record supports the district court's finding that Joshua made offensive bodily contact with Rachel, thus committing an assault under section 708.1(2)(a). In particular, the record reflects that Joshua used his body to block the hallway for roughly forty-five minutes. During that time, he extended his arms out and used his chest to prevent Rachel from passing. Rachel testified that Joshua would essentially chest-bump her as she tried to pass him. The natural consequence of using his body to prevent her movement was unwanted and offensive bodily contact. Finally, Joshua had the apparent ability to cause offensive contact because he did in fact cause contact. As such, Joshua committed an assault by causing offensive bodily contact with Rachel. *See* Iowa Code § 708.1(2)(a).

Joshua attempts to analogize this case to *Wasmund v. Wasmund*. In that case, the court found no assault occurred when the defendant physically blocked the plaintiff from leaving. No. 14-1832, 2015 WL 2089714, at *4-5 (Iowa Ct. App. May 6, 2015). The court found that any contact between the parties was "incidental or minimal and was initiated by [the plaintiff] moving towards [the defendant]." *Id.* at *5. However, that case is factually distinct from the standoff in this case. Rather

than an encounter that "occur[ed] in the blink of an eye," the confrontation between Rachel and Joshua lasted forty-five minutes. *See id.* Furthermore, the trial court implicitly found Rachel to be the more credible witness, noting that Joshua was "the primary physical aggressor" who "raised his arms and extended his chest towards [Rachel]." As such, *Wasmund* does not support Joshua's contentions.

The record also supports the district court's finding that Joshua committed an assault under section 708.1(2)(b). Multiple factors support the conclusion that Joshua intended to make Rachel fearful of offensive bodily contact or harm. First, we note that Rachel and Joshua had a contentious relationship leading up to the incident underpinning her application for a protective order. Their disputes include changing locks to the master bedroom and the use of Joshua's firearms.[4] On another occasion, Joshua followed Rachel to a friend's home while demanding she let him take the children to a wedding. He did not leave until police arrived. The rising tensions speaks to Joshua's intent to intimidate Rachel. *See Runyan v. Runyan*, No. 17-1120, 2018 WL 3302007, at *3 (Iowa Ct. App. July 5, 2018) ("'[A] defendant's history of threatening or violent conduct involving the same victim can be especially probative' and can 'establish the justifiable inference that a defendant's charged conduct was in fact intended to engender fear on the part of the victim . . . .'" (citation omitted)).

Similarly, the length of the encounter—roughly forty-five minutes—speaks to Joshua's intent to force Rachel into providing an answer to his persistent

---

[4] After Rachel filed her chapter 236 petition but prior to final hearing, she located a large bag in the garage that contained two handguns, one of which was loaded, an AR-15, and ammunition.

questions. Joshua's conduct is consistent with the district court's finding that he "was determined to impose his physical will on [Rachel] in an effort to intimidate her so that he could secure the answer to his question." While it is true that Rachel conceded Joshua had never physically harmed her before and that she repeatedly approached Joshua in an attempt to get past him—potentially causing some of the bodily contact—Rachel has met her burden of proof that Joshua committed an assault.

## B. Appellate Fees

Rachel requests an award of appellate attorney fees. "Like the district court, we have the authority to award attorney fees under Iowa Code section 236.5(4)." *Smith v. Janssen*, No. 16-0018, 2017 WL 1086206, at *4 (Iowa Ct. App. Mar. 22, 2017). "In determining whether to award attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal." *Bruske v. Bruske*, No. 17-0494, 2017 WL 6513629, at *3 (Iowa Ct. App. Dec. 20, 2017). Given the above factors, we decline to award appellate attorney fees.

**AFFIRMED.**