# IN THE COURT OF APPEALS OF IOWA

No. 21-1073
Filed May 11, 2022

**MARA RAE BUDWEG,**
        Plaintiff-Appellee,

**vs.**

**NATHANIEL RAY MCCORY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Coleman McAllister,

Judge.


        Nathaniel McCory appeals the entry of a protective order.  **REVERSED**

**AND REMANDED.**


        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

        Mara Rae Budweg, Des Moines, self-represented appellee.


        Considered by May, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

Nathaniel McCory did not handle the end of his relationship with Mara Budweg well. A couple of months after the break-up, Mara filed a petition for relief from domestic abuse. Following a hearing on the petition, the district court entered a final protective order. Nathaniel appeals, claiming the district court's finding that he committed domestic abuse assault against Mara is not supported by substantial evidence.[1]

## I. Background Facts and Proceedings

Mara filed her petition for relief from domestic abuse in June 2021. The petition alleged Nathaniel had threatened Mara, she feared for her physical safety, and the two were in an intimate relationship at the time. In the space on the form petition where she was asked to describe the "most recent" occurrence, Mara wrote that Nathaniel showed up at her gym twice in the past few days, but she left before he could speak to her. Mara then alleged that Nathaniel "has harassed [her] multiple times via phone/text," she has asked him to stop, and he has left "voicemails threatening that he will just show up at [her] house or call the cops because he is upset."

The district court entered a temporary protective order after an ex parte hearing. See Iowa Code § 236.4(2) (2021). At that hearing, Mara acknowledged Nathaniel had never "physically assaulted" her, but she testified he had "made some threatening texts or calls." After the court explained the legal definition of an assault to her, Mara described an incident in April when Nathaniel had been "very

---

[1] Mara did not file a brief in this appeal.

angry and upset in my face, hitting—like slamming doors, hitting things" in her presence.

A contested hearing was held in July. Mara provided more details about the April incident at that hearing, testifying that when she asked Nathaniel to leave her home, "[h]e left angry, yelling, slammed [the] door, hit [the] wall" and "[t]hen he proceeded to sit in [her] driveway for an extended period of time but would not leave." A few days later, Nathanial showed up at Mara's house and left a package for her. And between February and May, he sent her some angry text messages, an email, and five voicemails.[2] After the last voicemail in mid-May, Mara texted Nathaniel, "Please leave me alone or I will be taking the next steps." She followed this text message with a phone call to make sure he understood. This was the last time they talked. Mara did not see Nathaniel again until the end of June when he showed up at her gym to work out. She felt threatened by this because Nathaniel lives two-and-a-half hours away from her. Nathaniel explained at the hearing that he was in town that week for a class, and he went to Mara's gym because it was close to his class.

Mara maintained that Nathaniel never physically assaulted her, but when asked if he had "done anything to place [her] in fear of immediate physical contact

---

[2] These contacts were admitted into evidence. In the February email, Nathaniel was pleading with Mara to make things work, telling her toward the end: "You can call the police or do what ever you think you need to do. You know I'm harmless and I just need to hear from you." The undated text messages contained profanity toward Mara and expressed Nathaniel's frustration with her refusal to talk to him, stating at different points, "Fuck you"; "I'm fucking livid right now. Better just call the cops"; "You're a bitch"; and "I fucking hate you." In the five voicemails, Nathaniel told Mara that he was not threatening her but he missed her, loved her, and wanted to talk to her. In one, he said that he would "give up everything" to be with her, and she could call the police if she wanted.

which would be insulting, offensive, or painful," Mara responded, "Like hitting a door or slamming something." Mara elaborated this occurred during the April incident, and she feared that Nathaniel would hit her because "he has . . . said threatening things in the past and just his temper and the uncertainty of the situation." She specified Nathaniel had threatened to kill her dog. When asked by the court, "Anything else?" Mara answered, "No." In his testimony, Nathaniel agreed he slammed Mara's bedroom door during the April incident and then went to his vehicle.

In its ruling, the court found Nathaniel's text messages and voicemails to be threatening—or at least perceived as such by Mara—but insufficient to amount to an assault. Yet the court found they put Mara's "allegation of assault in proper context," giving credence to her claim that Nathaniel's actions during the April incident placed her "in fear of immediate physical contact that would be insulting, offensive, injurious or painful to her." And the court found it "clear from [Nathaniel's] actions" that he "intended to do so and he had the apparent ability to do so." As a result, the court found Nathaniel engaged in domestic assault and entered a final protective order. Nathaniel appeals.

## II. Standard of Review

Civil domestic abuse cases are equitable. *Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001). Accordingly, our review is de novo. Iowa R. App. P. 6.907; *Wilker*, 630 N.W.2d at 594. We "consult the record in its entirety and formulate our own opinion." *Wilker*, 630 N.W.2d at 594.

## III. Analysis

Nathaniel claims the evidence was insufficient to show he committed domestic abuse. He points out that threats placing another in fear, without more, are insufficient, and the focus is on his intent, not Mara's expectations. He argues the record lacks substantial evidence that he "specifically intended to assault Mara or that she was placed in fear by any of his actions as she alleged."

The court may grant a chapter 236 protective order upon a finding that the defendant engaged in domestic abuse. *See* Iowa Code § 236.5(1)(b). The party seeking protection is required "to prove the occurrence of domestic abuse by a preponderance of the evidence." *Wilker*, 630 N.W.2d at 596; *accord* Iowa Code § 236.4(1); Iowa R. App. P. 6.904(3)(f). "A preponderance of the evidence is the evidence that is more convincing than opposing evidence or more likely true than not true; it is evidence superior in weight, influence, or force." *DeLisle v. DeLisle*, No. 09-0093, 2009 WL 3088561, at *2 (Iowa Ct. App. Sept. 17, 2009) (citing *Martinek v. Belmond-Klemme Cmty. Sch. Dist.*, 772 N.W.2d 758, 761 (Iowa 2009)). When the evidence is equipoise, the petitioning party "has not carried the burden of proof by a preponderance of the evidence." *Gonzalez v. Laboy*, No. 19-1890, 2020 WL 5230366, at *2 (Iowa Ct. App. Sept. 2, 2020) (quoting *Greenberg v. Alter Co.*, 124 N.W.2d 438, 442 (Iowa 1963)).

Domestic abuse encompasses assaults in certain relationships, such as the intimate relationship in play here. *See* Iowa Code § 236.2(2)(e). Section 236.2 defines "assault" in accordance with section 708.1, which sets out alternative ways in which a person can commit an assault. Because there was no physical assault, Mara had to prove Nathaniel committed an act that was "intended to place [her] in fear of immediate physical contact which will be painful, injurious, insulting, or

offensive, coupled with the apparent ability to execute the act." *Id.* § 708.1(2)(b). "Although codified as a general intent crime . . . , our supreme court has repeatedly characterized assault as a specific intent crime." *Saxton v. Kahill*, No. 21-0199, 2022 WL 610437, at *2 (Iowa Ct. App. Mar. 2, 2022). If the circumstances show an actor has a subjective desire for a prohibited result, then specific intent is satisfied, and "[i]ntent can be inferred from an act's natural consequences." *Id.*

The incident in question involved the parties getting into an argument and Nathaniel slamming a door and hitting a wall before leaving. The district court found, based on Nathaniel's previous threatening behavior, that these acts satisfied the definition of assault in section 708.1(2)(b). The evidence does show that Nathaniel has had angry outbursts, directed profane language at Mara about his frustration with the end of their relationship, and continued to contact her after she told him not to. We can infer from Nathaniel's voicemails that Mara considered his attempts to contact her as threatening. But there is no evidence that he ever threatened physical contact. On the contrary, the voicemails can also lead to an inference that Nathaniel simply wanted to see Mara and come to her home to talk about their relationship.[3]

The crux of Mara's petition for relief from domestic abuse was that Nathaniel's outbursts of anger *could* lead to assaultive physical contact at some point based on his threatening behavior in the past. But when asked what threats

---

[3] We acknowledge the district court found that Nathaniel was not credible. *See DeLisle*, 2009 WL 3088561, at *2 ("[F]actual disputes depending heavily on the credibility of the witnesses are best resolved by the district court, which has a better opportunity than we do to evaluate the witnesses."). But even Mara's testimony alone did not prove that Nathaniel assaulted her. *See id.*

Nathaniel made to her in the past, Mara only testified about a threat to kill her dog. There was no evidence that Nathaniel ever threatened physical harm to Mara herself.

Absent a history of any physical abuse or threats of physical harm to the petitioner, we have found an actor's "angry spells," "yelling and screaming," "pushing and slamming doors," and cursing insufficient to establish the requisite specific intent. *DeLisle*, 2009 WL 3088561, at *2–3. And the evidence suggests that, after the argument started, Nathaniel slammed the door and hit the wall as he was leaving the residence to go sit in his car. If Nathaniel had taken these actions as he was going toward Mara instead of while he was leaving, it would be one thing, but "the law requires an act which was intended to place another in fear of *immediate* physical contact." *Id.* at *3. And Nathaniel's state of mind controls, not Mara's. *See id.* With no history of physical abuse, Mara's evidence about Nathaniel's prior disturbing behavior is simply insufficient "to close a gap between general complaints about angry behavior and specific proof of an 'act intended to place another in fear of immediate physical contact.'" *Id.* (citation omitted).

After reviewing the record de novo, we find the evidence insufficient to prove an assault. We reverse the decision of the district court and remand for cancellation of the protective order and dismissal of Mara's petition. *See Saxton*, 2022 WL 610437, at *5.

**REVERSED AND REMANDED.**