# IN THE COURT OF APPEALS OF IOWA

No. 22-0777
Filed August 30, 2023


**TERRI TAWAUNDA MADONG,**
    Plaintiff-Appellee,

**vs.**

**OSCAR TUMUSHABE MADONG,**
    Defendant-Appellant.
_____


Appeal from the Iowa District Court for Cerro Gordo County,
DeDra Schroeder, Judge.


Oscar Madong appeals a final domestic abuse protective order.
**AFFIRMED.**


Nellie D. O'Mara of O'Mara Law Office, PLLC, Mason City, for appellant.

Diane Wilson of Iowa Legal Aid, Mason City, for appellee.


Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

Oscar Madong appeals a final domestic abuse protective order issued under Iowa Code section 236.5 (2022). He challenges the finding that he engaged in domestic abuse against Terri Madong, his estranged wife. Because a preponderance of the evidence shows Oscar intended to place Terri in fear of immediate physical contact that would be painful or injurious, we affirm.

Terri filed a pro se petition for relief from domestic abuse following an incident in March 2022. At the time, Oscar had agreed he would stay out of their apartment.[1] But after learning that Terri had a guest staying with her, Oscar decided to get "proof of what was happening in [the] marriage." He entered the apartment after midnight and went to Terri's room while recording a video on his phone. Some physical contact occurred when Terri grabbed for the phone and Oscar tried to prevent her from taking it. Terri testified that Oscar was screaming at her and her guest. Oscar testified that Terri's guest was yelling at him "in a very aggressive way," so he went to the kitchen and retrieved two knives to defend himself if the guest attacked him. Oscar claims that after ten or fifteen seconds, he realized the guest was not going to attack him, returned the knives, and "came back to casually speak to Terri." The incident ended when law enforcement officers, responding to a call from Terri's guest, escorted Oscar out of the apartment.

A court may grant a domestic abuse protective order under if it finds the defendant has engaged in domestic abuse. Iowa Code § 236.5(1)(b).

---

[1] Terri filed for divorce in February 2022. The two shared an apartment but were staying in separate rooms.

Chapter 236 defines "domestic abuse" as an assault under section 708.1 that occurs between family or household members who reside together. *Id.* § 236.2(2). An assault occurs when a person, without justification, places another in fear of immediate physical contact that will be painful or injurious with the apparent ability to execute the act. *Id.* § 708.1(2)(b). As the plaintiff, Terri "must prove the allegation of domestic abuse by a preponderance of the evidence." *Id.* § 236.4(1). We review the district court's finding that Terri met her burden de novo. *See Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001). We give deference to the trial court's factual findings even though they are not binding. *See id.*

Oscar contends Terri failed to meet her burden because she did not show he intended to place her in fear of immediate physical conduct that was painful or injurious. He likens his conduct to the conduct described in *Labs v. Karteus*, in which this court held that the plaintiff failed to show the defendant acted with the specific intent to place her in fear of physical contact. No. 13-0777, 2014 WL 250254, at *3 (Iowa Ct. App. Jan. 23, 2014). But in *Labs*, the court ruled on the parties' objections as they were made, so we treated the action as an action at law and reviewed for correction of errors at law. *Id.* at *2. Under that standard, the district court's findings of fact were binding if supported by substantial evidence. *Id.* The court found that there was not substantial evidence showing the defendant intended to place the plaintiff in fear of physical contact:

> Karteus arrived at Labs house unannounced. They spoke to each other through the truck window. There is no evidence that Karteus ever exited or threatened to exit his vehicle during their discussion. . . . There is no evidence that Karteus's hands broke the plane of the door separating him and Labs or that his gestures were directed at Labs as opposed to just gesticulating while speaking. There is no testimony that Karteus made any specific motion or

action that reasonably could be interpreted as a threat of physical contact.

*Id.* at *3.

Our standard of review and the facts before us lead us to a different conclusion than reached in *Labs.* Here, there was no plane of separation; Oscar entered Terri's room without her permission and had physical contact with her. Terri testified, "I was trying to stop him from comin' into the room. And he was like pushin' me." While this was happening, Terri felt threatened because Oscar was screaming and angrier than she had ever witnessed. Then Oscar went downstairs and grabbed two knives. Although he claimed it was for self-defense and that he did not get near Terri while holding them, Terri testified, "[H]e was tryin' to push past me with the knives and go upstairs." Oscar argues that Terri's act of placing herself between her and her guest shows that she was not afraid of him. But Terri testified that she "was actually scared" and positioned herself between the men because "I was also tryin' to protect my friend who was visitin'." On this record, Terri met her burden of showing by a preponderance of the evidence that Oscar committed domestic abuse, and we affirm the protective order.

**AFFIRMED.**